CENTRAL MANUFACTURERS' MUTUAL INSURANCE
COMPANY *v.* FRIEDMAN.

4-8475                                    209 S. W. 2d 102

Opinion delivered March 8, 1948.

*Hugh M. Bland,* for appellant.

*Hill, Fitzhugh & Brizzolara,* for appellee.

HOLT, J. Appellee brought this action to recover for loss of personal property belonging to his minor son, Benno S. Friedman, in the amount of $428.95, on a Floater Insurance Policy issued to appellee by appellant company, on July 20, 1946, in the principal sum of $5,000, for which appellee paid a premium of $155. Appellant denied liability.

A trial before the court sitting as a jury resulted in a judgment for appellee for the full amount claimed, for attorneys' fees and 12% penalty. This appeal followed.

Appellant says there are only two questions for decision: "1. Was Benno S. Friedman, at the time of the thefts of his personal property, a member of the insured's family of the same household within the terms and provisions of the policy of insurance? 2. Did the court err in permitting the plaintiff to introduce incompetent, irrelevant and hearsay testimony and to consider the same in making its findings of fact and conclusions of law?"

Mr. I. J. Friedman, Benno's father, testified: "My name is I. J. Friedman. I live at 722 South 24th Street, Fort Smith, Ark., and I have a policy of insurance with The Central Manufacturers' Mutual Insurance Company of Van Wert, Ohio. (The policy was produced and introduced in evidence). My son, Benno S. Friedman, was drafted into the Army in the spring of 1946. At that time he was 18 years of age. He is not married and was living at my home at the time he was drafted. He is now 19 years of age."

Over appellant's objection and exceptions, Mr. Friedman was further permitted to testify that his son, Benno, would be discharged from the Army when his 18 months were up, that he did not have a separate home of his own, that he was subject to Army orders wherever he was located, that his son attended Ohio State College three or four months before he was drafted, attended Officers Training School and received a commission, that he was paying his son's expenses at Ohio State, that he intended to send him back to school after his discharge and that his son was coming back home after his discharge.

It was stipulated "that on February 1st to 8th, 1947, there was stolen from Benno S. Friedman, from locked room by picking lock, in Billeting Officers Quarter, No. 804, Room No. 18, at Fort Eustis, Virginia, the following articles," (naming them), of the value of $238.45, and "that on January 22, 1947, there was stolen from said Benno S. Friedman, from locked suitcase from Building 2309, Fort Eustis, Virginia, the following articles," (naming them), in the amount of $252.50, "and that if

the plaintiff is entitled to recover he should recover in the amount of $428.95 for the loss of the articles."

The policy in question provides: "Property Covered: 1. Personal property owned, used or worn by the persons in whose name this policy is issued, hereinafter called the Insured, and members of the Insured's family of the same household, while in all situations, except as hereinafter provided. . . . 4. With respect to the unscheduled personal property ordinarily situated throughout the year at residences other than the principal residence of the Insured, the Company shall not be liable in excess of ten per cent of the amount of insurance set forth in Item (a) Paragraph 3," or ten per cent of $5,000."

At the time of the property loss here, Benno was a minor and it was the duty of the parent to support and educate him so long as he remained a member of his family.. *Biggs* v. *St. Louis, Iron Mountain & Southern Railway Company;* 91 Ark. 122, 120 S. W. 970, and *Frauenthal & Schwarz* v. *Bank of El Paso,* 170 Ark. 322, 280 S. W. 1001, 44 A. L. R. 871.

The domicile of Benno was with his father, *Landreth* v. *Henson,* 116 Ark. 361, 173 S. W. 427. Domicile includes residence and place of abode. Webster defines "domicile": "A place of residence, either of an individual or a family; a dwelling place; an abode, a home or habitation." Residence and place of abode are synonymous. *Husband* v. *Crockett,* 195 Ark. 1031, 115 S. W. 2d 882. The Constitution of this state provides: Art. XIX, § 7: "Absence on business of the state or of the United States or on a visit, . . . shall not cause a forfeiture of residence once obtained."

The evidence is undisputed that Benno was unmarried, a minor, was living with his father at the time of his induction into the Army, and intended to return to the parental home in Fort Smith when discharged. He did not intend to change his domicile or residence and had made no change unless his military service alone brought about such change. In the circumstances here,

Benno's military service did not bring about any change in his domicile or residence.

In the very recent case of *Kennedy* v. *Kennedy*, 205 Ark. 650, 169 S. W. 2d 876, we said: "In the Conflict of Laws, vol. 1, p. 155, Professor Beale discusses the 'domicile of a soldier or sailor' and the capacity of a sailor or soldier to acquire a 'residence' notwithstanding his service in the Army or Navy, and it was there said: 'It is, of course, possible for him (soldier) to provide a house of his own, off the post, where his family may live, if this is allowed by superior officers; and it is possible for him to change his domicile by the proper proceedings while on leave. But he cannot acquire a domicile in an Army Post.'

"At p. 157 of the same text it is said: 'This does not mean, of course, that the soldier or sailor in any way loses his personality or ceases to be *sui juris*. He is as able as anyone to acquire a new domicile so far as conditions allow. He cannot acquire it by any act done under military orders since, as has been seen, he has no choice but obedience. His orders would, so long as he remained in the Army, be enforced by all the powers of the state, and if he were permitted to leave the Army he could no longer remain in the Army quarters. He may, however, like anyone else, change his domicile by acquiring a residence outside an Army Post with the intention of making it his home. . . .

"The domicile of a soldier or sailor in the military or naval service of his country generally remains unchanged, domicile being neither gained nor lost by being temporarily stationed in the line of duty at a particular place, even for a period of years. A new domicile may, however, be acquired if both the fact and the intent concur."

Here, there is no evidence that Benno acquired a residence outside of the Army post with the intention of making it his home.

We think the word "household" as used in the section of the policy, *supra,* meant domicile, residence or place of abode. "Household" is defined in Bouvier's

Law Dictionary, Rawle's Third Revision, vol. 2, page 1462, as follows. "Those who dwell under the same roof and constitute a family. Webst. But it is not necessary that they should be under a roof, or that the father of the family be with it, if the mother and children keep together so as to constitute a family; *Woodward* v. *Murray,* 18 Johns. (N. Y.) 400."

We hold that Benno Friedman was a "member of the insured's family of the same household" and was therefore protected by the policy when the theft occurred, and that the further provision in the policy, "while in all situations" covered the stolen property regardless of its location. That such was the intended meaning of this latter phrase, by the insurer, company, is emphasized by the provisions of section 4, *supra,* which limits the amount of the company's liability to 10% of all articles located away from the insured's residence. The face of the policy was for $5,000 and under this section 4, the most that could be recovered on articles kept away from the home was $500. Had the insurer, company, desired to restrict the geographical boundaries of its coverage, it could have very easily so provided in the policy.

The rule is well settled that policies of insurance must be construed, in case of any ambiguity, most strongly in favor of the policy holder, and against the insurer who wrote the insurance contract.

Appellant's contention that the evidence of I. J. Friedman, *supra,* to which it objected, was incompetent and should not have been admitted is, we think, untenable for the reason that such evidence does not come within the hearsay rule. This testimony was within the knowledge of Benno's father. Benno being a minor, was subject to the control of his father, during his minority, and there was no evidence that he had acquired, or intended to acquire, any other domicile or residence, than that provided by his father in Fort Smith.

Finding no error the judgment is affirmed.