**NEIDHOEFER v. AUTOMOBILE INS. CO. OF HARTFORD, CONN.**

No. 10022.

United States Court of Appeals Seventh Circuit.

May 12, 1950.

Thomas J. Downs, John D. O'Connor, Chicago, Ill., Downs, Scheib, Osborne & Johnson, Chicago, Ill., of counsel, for appellant.

James G. Culbertson, Oswell G. Treadway, Chicago, Ill., Hinshaw & Culbertson, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and DUFFY and FINNEGAN, Circuit Judges.

MAJOR, Chief Judge.

This action was to recover upon a certain policy of insurance issued by the defendant to the plaintiff for the alleged losses of certain furs and jewelry described in the complaint as the property of his former wife, Annette Neidhoefer. Recovery was sought by the plaintiff as the named assured in said policy and also under an assignment by Annette Neidhoefer of all her right, title and interest in and to the said policy and claims thereunder. The complaint admitted failure to file a detailed sworn proof of loss as required by the policy but alleged that this requirement had been waived by the defendant.

The defendant's answer put in issue the alleged losses of the furs and jewelry described in the complaint and, if lost, their identity with those described in the policy of insurance. The answer alleged that the claimed losses, if any, were not covered by the policy in that Annette Neidhoefer was not a member of the plaintiff's family of the same household but, on the contrary, was living separate and apart from him. Further, the answer alleged that the policy insofar as it insured the property of Annette Neidhoefer had been cancelled by her prior to the alleged losses. Also, the defendant denied that it had waived the provision of the policy requiring the assured to file a detailed sworn proof of loss.

After the issues were joined certain admissions of fact by the plaintiff, in response to defendant's request, were filed. Thereupon, the case was tried by a jury which answered a special interrogatory submitted by the court and returned a verdict favorable to the plaintiff. Prior to the trial, defendant's motion for summary judgment was denied. On the trial, both at the close of the evidence introduced by the plaintiff and at the close of all the evidence, the defendant moved for a directed verdict in its favor. In each instance the court took such motions under advisement. After verdict, the defendant renewed its motion for summary judgment theretofore filed, its motions for a directed verdict, its alternative motion for judgment notwithstanding the verdict, and its further alternative motion for a new trial. On July 1, 1949, the court denied all of defendant's motions except that for judgment notwithstanding the verdict, which was allowed, and the verdict of the jury and its answer to the special interrogatory were vacated and set aside and judgment was entered for the defendant. From this judgment the appeal comes to this court.

Thus, our function is to review the action of the court in setting aside the jury's verdict and entering judgment for the defendant, and the propriety of this ruling is dependent upon whether plaintiff was precluded from recovery as a matter of law or whether he failed to offer proof on any material issue of fact sufficient to present a jury question.

In the beginning, it is pertinent to note that the plaintiff is in the unfortunate position of attempting to recover on an insurance policy without offering the testimony either of the plaintiff in whose name the policy was issued or that of Annette Neidhoefer, admittedly the owner of property alleged to have been stolen. This is particularly so in view of the issues raised by the defendant. Evidently no other person could be expected to be in as good position to relate the circumstances under which the property was alleged to have been stolen, its value and, even more important, its identity, as that which was described in the policy. Also, they undoubtedly were in a better position than any other person to know whether Annette Neidhoefer at the time of the alleged losses was a member of plaintiff's family of the same household, and it would seem that plaintiff was in a better position than any other person to give testimony as to the circumstances relied upon to show that the defendant waived the provision of the policy relative to a sworn proof of loss.

Notwithstanding the importance of these parties as witnesses, the record dis-

closes no reason why their testimony was not produced in person or, if that was not feasible, by deposition. The rule is well established and we think it is of significance in the instant situation that the failure to produce evidence, which under the circumstances would be expected, gives rise to a presumption against the party failing to produce it. Mantonya v. Reilly, et al., 184 Ill. 183, 203, 56 N.E. 425; Flannery v. Flannery, 320 Ill.App. 421, 430, 51 N.E.2d 349; Princell v. Pickwick Greyhound Lines, Inc., 262 Ill.App. 298, 313.

Of the numerous issues argued on this appeal, we take the view that there are only two which we need to consider, either of which if decided adversely to the plaintiff will bar recovery and support the order setting aside the jury's verdict and allowing judgment for the defendant. The two issues are: (1) whether Annette Neidhoefer was at the time of the alleged losses a member of plaintiff's family of the same household, and (2) whether there was a waiver by the defendant of the policy provision which required the assured to file with it a sworn proof of loss.

As already noted, plaintiff was named in the policy as the assured. The property alleged to have been lost was owned by Annette Neidhoefer who at that time was the wife of the assured. The policy contained a provision which provided coverage to "Personal property owned, used, or worn by the persons in whose name this policy is issued, hereinafter called the Assured, and members of the Assured's family of the same household, while in all situations, except as hereinafter provided."

A special interrogatory was submitted to the jury as follows: "Was Annette Neidhoefer living separate and apart from the plaintiff, Charles A. Neidhoefer, and not as a member of his household at the time of the alleged losses in question?" The jury answered, "No."

Passing the confused nature of this question, there is not the slightest factual basis for a finding that Annette Neidhoefer was not at the time of the alleged losses living separate and apart from her husband. As to whether she was a member of his household at the time of the alleged losses requires an interpretation and construction of the policy provision and is, we think, as plaintiff concedes in his brief, a legal question. But even though it be considered as factual and properly submitted to the jury, we think there is no substantial evidence to support the jury's answer.

On September 12, 1946, plaintiff and his wife resided in an apartment at 534 Stratford Place, Chicago, Illinois. The evidence shows without question—in fact, it is conceded by all—that she separated from her husband on that date and took up her abode elsewhere, and that she continued in such separation during all the time relevant to the instant inquiry is conclusively shown. During such time she lived at various hotels in Chicago and in Florida. On October 3, 1946, she commenced her action in the State Court of Cook County against plaintiff for separate maintenance, alleging therein under oath that she separated from him on September 12 and that said separation had been continuous. On May 8, 1947, she filed an amended complaint for divorce realleging therein that she separated from plaintiff on September 12, 1946, and that said separation had been continuous. On May 8, 1947, she was granted a decree of divorce, which recognized that she had been continuously separated from her husband since September 12, 1946.

The alleged losses relied upon in the instant case occurred on December 9, 1946 (more than a month after she filed her separate maintenance suit) while she was residing at Canterbury Court in Chicago.[1] In reporting to the defendant her loss of December 9, Mrs. Neidhoefer in a written statement said: "My name is Mrs. Charles Neidhoefer. I reside in apartment 323-324 Hotel Sherry, 1725 E. 53rd Street, Chicago, Illinois. My income is from

---

1. There was another alleged loss of a gold cocktail ring which took place on September 29, 1946, while Mrs. Neidhoefer was living at the Drake Hotel in Chicago. As we understand, this loss is not involved in the instant appeal.

separate maintenance from my husband, Charles Neidhoefer of 534 Stratford Place, Chicago, Illinois, from whom I have been separated from since and living apart from since September 12, 1946. On December the 4 I moved into apartment 1205 of the Canterbury Court Apartments 1220 No. State St., Chicago, Illinois." In a further statement furnished the defendant on December 19, 1946, she stated: "I reside at the Hotel Sherry, 1725 E. 53rd Street, Chicago, Illinois. On November 7, 1946 I left the Ambassador Hotel to go to Florida. * * * Dec. 4. * * * I moved to the Canterbury Apts. 1220 No. State St."

In spite of this overwhelming proof that she left plaintiff's home on September 12, 1946, and that she lived separate and apart from him continuously from that time on, including December 9, 1946, the date of the alleged losses, plaintiff relies upon certain circumstances to show otherwise, none of which is inconsistent with this direct and positive testimony. It is pointed out, for instance, that some of the personal effects of Mrs. Neidhoefer were left in the former home at 534 Stratford Place and that she was seen at this apartment on a few occasions subsequent to September 12. The fact that she left some of her personal belongings in her former home is no proof that she was not separated and living separate and apart from her husband. Neither is the fact that she was seen at the apartment on a few occasions, always in the daytime, any proof that she was not living separate and apart. Especially is this so in the absence of any explanation as to why she was there. There is not a scintilla of proof that during this time she had a meal or stayed overnight in the home of her husband.

■ Whether the status thus assumed by Mrs. Neidhoefer, apparently by her own choice, was such as to sever her relation as a member of the assured's family "of the same household" is the problem. The numerous cases called to our attention and others which we have investigated are of little help because the answer to the question, like many others, is dependent upon the particular facts of the case.

A few definitions, however, may be helpful. "Persons who dwell together as a family constitute a 'household.'" Arthur v. Morgan, 112 U.S. 495, 499, 5 S.Ct. 241, 243, 28 L.Ed. 825. "'Household' appears to mean a family residing under one roof." Schurler v. Industrial Commission, 86 Utah 284, 43 P.2d 696, 699, 100 A.L.R. 1085. "A 'family' is a collective body of persons living in one house, and under one manager. It consists of those who live with the pater familias. The word is often used interchangeably with 'household.'" Indemnity Ins. Co. of North America v. Sanders, 169 Okl. 378, 36 P.2d 271, 273. "The word 'household' is variously used to designate people, generally, who live together in the same house * *. [It means] 'those who dwell under the same roof and compose a family; a domestic establishment.'" Island v. Fireman's Fund Indem. Co., Cal.App., 172 P.2d 520, 525. Under these definitions and many others which could be cited, we doubt if Mrs. Neidhoefer at the time of the alleged loss was a member of the assured's family, but if she was, it seems certain that she was not "of the same household."

The most pertinent case cited by the plaintiff is Central Manufacturers' Mutual Insurance Co. v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557, where the Supreme Court of Arkansas considered the provision of an insurance policy in almost the exact language of that now under consideration. There, the assured's son, a minor, was drafted into the Army and was living in the officers' quarters at the time of the loss. The court denied the contention of the insurance company that the son was not a member of the assured's family at the time of the loss within the terms and provisions of the policy. The distinction between that and the instant situation is made plain by the court's statement, 209 S.W.2d at page 103: "He [Benno] did not intend to change his domicile or residence and had made no change unless his military service alone brought about such change." On the other hand, the Supreme Court of California, in Island v. Fireman's Fund Indem. Co., supra, where a similar question was presented,

held that a son who was in the Army was not a member of his father's household.

■ We think that the important and perhaps controlling feature in situations of the instant character is the intent possessed by the departing member of a family. Of course, it is not difficult to visualize a situation where a wife might leave the home for a considerable time and still retain her status as a member of the family and the household, for instance, if she was away on a visit or for some other purpose. In such a situation the separation would be not only with the consent of the husband but with the intent on the part of the wife to return. In the instant case, however, we see no reason to think or infer that Mrs. Neidhoefer, when she separated from her husband and home on September 12, 1946, had any intention other than making such separation permanent. And the status which she then assumed was firmly established and confirmed by her suit for separate maintenance and again by her suit which culminated in a divorce. More than that, her assumed status was clearly recognized in the written statements which she made to the defendant in connection with her loss.

■ The burden was upon the plaintiff to prove that Annette Neidhoefer was a member "of the assured's family of the same household" at the time of the alleged loss. In our view, there was a complete failure on the part of the plaintiff in this respect. And again we note it is unfortunate for the plaintiff that there is no testimony from those in a position to best know as to the relation which Annette Neidhoefer sustained to the family and the household of the assured.

It is, therefore, our view that there was no substantial basis for the answer which the jury gave to the special interrogatory. The answer to the question submitted should have been "Yes." Such an answer would have been a bar to recovery, and our conclusion in this respect requires an affirmance of the court's order.

However, the other issue, that is, that the defendant waived the policy requirement as to proof of loss, presents an equal-ly formidable obstacle to plaintiff's right of recovery. The policy provides that the assured shall "file with the Company or its Agent within ninety days from date of loss, a detailed sworn proof of loss. Failure by the Assured either to report the said loss or damage or to file such written proofs of loss as herein provided shall invalidate any claim under this policy."

■ Plaintiff admits that this requirement was not complied with but relies upon certain circumstances as a reason for non-compliance, which it is asserted constitutes a waiver by the defendant. It may be noted that proof of waiver is upon the party who asserts it and that it must be proven by clear and unequivocal evidence. Spence v. Washington National Ins. Co., 320 Ill.App. 149, 154, 50 N.E.2d 128; Feder v. Midland Casualty Co., 316 Ill. 552, 558, 147 N.E. 468.

■ Plaintiff, to show waiver, relies almost entirely upon the testimony of James R. Neidhoefer, his son. Without going into a detailed analysis of his testimony, it is sufficient to note that he was approached by two representatives of the defendant company with the suggestion that the defendant must have a non-waiver agreement as a condition to their investigation of the reported loss. According to this witness, the agents of the company told him that if a non-waiver agreement was signed no proof of loss would have to be filed. Defendant's agents denied that any such promise was made. In any event, the non-waiver agreement proposed by the defendant provided, among other things: "Notice is hereby given and accepted, and it is hereby mutually understood and agreed, that no representative of this Insurance Company has power or authority to waive any of the conditions of its policy."

This non-waiver agreement, later signed by the witness' father (the assured), was examined not only by the witness and later by his father but also by an attorney representing the latter. It would hardly seem that the testimony of James Neidhoefer as to promises made by agents of the defendant could be considered sub-

274

stantial proof in view of the unambiguous provision of the non-waiver agreement, and especially where it was examined by plaintiff's attorney before it was signed by the plaintiff. Moreover, and still more important, is the fact that there is no proof whatever that plaintiff as the assured was ever told or informed of the promises which his son, James, claimed were made him by agents of the defendant. Neither is there any proof that the son, James, at such time was acting as the agent for his father. And it has been held that before a party can claim a waiver it must appear that he relied upon the acts constituting the alleged waiver and failed to comply with the provisions of the policy because he was led to believe that compliance therewith was unnecessary. Hensel et al. v. Capital Live Stock Ins. Co., 219 Ill.App. 77, 83; Beroth v. Electrical Workers Benefit Association, 166 Misc. 212, 2 N.Y.S.2d 93, 95.

Thus, if we indulge in the rather extravagant assumption that the agents of the defendant made promises to the son, James, as was testified to by him, there still is no proof that such promises were relayed to the plaintiff and that they were relied upon by him as an inducement to pursue a course different from that which he would otherwise have done. And there is a strong inference that he failed to make the proofs required for some reason other than a reliance upon promises made by the defendant. Especially is this so in view of the fact that he was at that time represented by an attorney. Again we note that the plaintiff was the person naturally expected to know why there was a failure to comply with the provision of the policy concerning proof of loss, and particularly the facts and circumstances relied upon by him to constitute waiver. In our view, the plaintiff failed to meet his burden in this respect, and there can be no recovery for failure to comply with this provision of the policy.

We therefore conclude that the court properly vacated the jury's verdict and gave judgment for the defendant. The order appealed from is

Affirmed.