BELL, GUARDIAN *v.* SILAS, GUARDIAN.

5-422                                                   268 S. W. 2d 624

Opinion delivered May 24, 1954.

[Rehearing denied June 28, 1954.]

*Chas. F. Cole,* for appellant.

*W. J. Arnold* and *C. T. Bennett,* for appellee.

GRIFFIN SMITH, Chief Justice.   Len Harmon and his wife, Elsie, and their infant child, were killed near White Hall, Ill., May 8th, 1953.   Their other two children (Gerald, a boy of six, and Shirley Ann, two years younger) were with their parents, but survived the ordeal.   Harmon and his wife had formerly resided at Piggott, Ark., but had been in Indiana for approximately six years. Lorse Silas is the grandfather of Gerald and Shirley Ann,. Mrs. Harmon having been his daughter.   Silas and his wife now reside in Independence county at Cushman.

William E. Bell had resided near Decatur, Indiana, for almost five years, but in March, 1953, he went to

Clay county, Arkansas, to assist his father on a farm. The witness is an uncle by marriage of the two children. Bell's statements, and admissions by other interested witnesses, are that guardianship and administration matters were necessary in order to collect compensation paid by the railroad company, eighteen thousand of which appears to have been received by the administrator in addition to $3,000 in insurance.

Shortly after the tragic wreck the paternal grandmother of the two children, and the maternal grandparents, with other relatives, held conferences to determine what course ought to be pursued. It was agreed that Bell should go to Indiana to negotiate with or sue the railroad company and to collect insurance.

Appellee and his wife contend that there was no agreement regarding custody of Gerald and Shirley Ann other than the paternal grandmother's statement that she was not in a position to care for them. Appellee and his wife, however, say that it was understood that they were to have the children.

There is little doubt that appellee knew that Indiana guardianship and administration would be required as an incident to collection of the sums they hoped for.

Perhaps the maternal grandparents were not familiar with legal terminology to the extent that they understood what a guardian's duties would be; but it is certain that they acquiesced in the suggestion that Bell return to Indiana and take whatever steps might be necessary to collect for the minors.

Following the accident Shirley Ann was taken to a hospital in St. Louis. Gerald was hospitalized at Kennett, Mo., and from there he was taken to appellee's home. Bell later had the boy for a short time, but appellee then took the child to Cushman and has kept him in spite of Bell's protests. Shirley Ann is now in appellant's home.

In *Landreth* v. *Henson,* 116 Ark. 361, 173 S. W. 427, Chief Justice McCulloch, speaking for an undivided

court, said that our decisions had followed the common law rule that the last domicile of the deceased father of an infant constitutes his legal domicile, and cannot be changed or removed by his own act until he reaches his majority. See *Grimmett* v. *Witherington*, 16 Ark. 377.

Appellee cites the Restatement, Conflict of Laws, § 39: "If both parents of a minor child are dead *and no guardian of the child's person is appointed,* the child by living with its grandparent at the latter's home has the domicile of that grandparent". This summation is predicated upon a situation where there is no guardian.

In the case here presence of the minor in this state was incidental to the ill-fated trip. At the time the parents were killed Gerald, because of his tender years, was incapable of deciding whether he preferred to live in Arkansas or in Indiana; nor was this taken into consideration when the family discussions were had— discussions resulting, as appellee says, in an understanding that both children should be reared in his home.

Bell was appointed guardian in Indiana May 19, 1953. Appellee's appointment in Independence county did not occur until September 14th. On August 7th Bell executed bond for $38,000 with Capitol Indemnity Insurance Company as surety.

In consenting to Bell's appointment in Indiana appellee may have had in mind the unexpressed reservation that the foreign court's authority would be limited to the designation of a guardian impliedly restricted to financial functions, but the court had no information respecting this implication.

In these circumstances we are not willing to say that Gerald, solely by virtue of the family discussions, or because of his accidental presence in the state, was a resident of Arkansas or that for legal purposes he was domiciled here. We therefore defer to the foreign court's judgment and hold that appellant is the duly appointed guardian, and entitled to custody of the child.

Reversed.