[No. 36411.   Department Two.   July 25, 1963.]

American Universal Insurance Company, *Respondent,* v.
Charles Wesley Thompson, *Defendant,* State Farm
Mutual Insurance Company, *Appellant.**

*Skeel, McKelvy, Henke, Evenson & Uhlmann* and *Michael Mines,* for appellant.

*Brethorst, Fowler, Bateman, Reed & McClure,* by *J. Edwin Thonn,* for respondent.

Hamilton, J.—State Farm Mutual Automobile Insurance Company, the garnishee defendant, appeals from a judgment imposing liability under a nonowner insuring agreement.

Appellant accepts the findings of fact as entered by the trial court.  The material findings are:

"2.  That, on or about September 28, 1959, Charles Wesley Thompson, while operating an automobile not owned by him, collided with a 1956 Cadillac automobile  .  .  .   That the accident was proximately caused by the negligence of said Charles Wesley Thompson  .  .  .

"  .  .  .

"5.  That, on the 28th day of September, 1959, State Farm Mutual Insurance Company had in full force and effect a policy of automobile liability insurance  .  .  .   issued to Loren S. Thompson and Madge Thompson, residents of Boron, California; That said policy obligated the garnishee defendant to pay for property damage, up to $5,000.00,

*Reported in 384 P. (2d) 367.

arising from the use of a non-owned automobile by the named insured or a relative. The policy defines 'relative' as *'a relative of the named insured who is a resident of the same household.'*

"6. That said Charles Wesley Thompson resided with his parents, Loren S. and Madge Thompson, continuously until October 16, 1958, when, at the age of eighteen, he entered the United States Army. He then went to Fort Ord, California, where he stayed for eight weeks or so during the completion of his basic training. He then returned home on a fifteen day furlough and lived at his parents' home with the exception of one night, December 30, 1958, when he went to Tonopak [*sic*], Nevada, and was married. He left immediately thereafter to go to Fort Sill, Oklahoma. His wife did not accompany him;

"7. That Charles Wesley Thompson was thereafter transferred from Fort Sill to Fort Lewis. In August, 1959, he received a second fifteen day furlough and returned to Boron. During that furlough he again lived at his parents' home, with the exception of two or three nights when he stayed with his wife at her parents' home. Following that August furlough, he returned to Fort Lewis and was living on post at the time of the accident. His wife did not accompany him to Fort Lewis prior to the accident;

"8. Following the accident, Thompson's wife came up to Tacoma and stayed here for a period of thirty days, during which time Thompson obtained overnight passes and stayed with her at the home of a friend in South Tacoma. In March, 1960, he obtained a thirty day leave and returned to California where he again stayed at his parents' home, with the exception of two or three nights when he was with his wife at her parents' home;

"9. That the marriage between Charles Thompson and Barbara Thompson was declared 'null and void ab initio' by a judgment of the Superior Court of California in and for the County of Kern, dated April 25, 1960;

"10. That, during the period he was in the Army, Charles Thompson stored his personal belongings at his parents' home, and, received a loan of $200.00 and gifts totaling $100.00 from his parents; That, during this period, he did not establish a residence other than the home of his mother and father."

From these findings of fact, the trial court entered the following conclusions of law, to which appellant excepts:

"2. That, under California law, Charles Wesley Thompson was a resident of the same household as his parents, Loren S. Thompson and Madge Thompson, within the meaning of said contract on September 28, 1959, and that said Charles Wesley Thompson was therefore an additional insured and entitled to the benefits of said contract of insurance;

"3. That the plaintiff is entitled to a judgment against the garnishee defendant . . ."

■ The contract of insurance involved was made in California. The parties, the trial court, and we agree that California law governs interpretation and construction of its terms. *Williams v. Steamship Mut. Underwriting Ass'n*, 45 Wn. (2d) 209, 273 P. (2d) 803; 29 Am. Jur., Insurance §§ 30, 31, pp. 449, 450; 44 C.J.S., Insurance § 52, p. 504; 2 Anderson, Couch on Insurance (2d ed.) § 16:2, p. 3; 12 Appleman, Insurance Law and Practice § 7079, p. 120.

The insurance policy in question contains the following pertinent clauses:

"INSURING AGREEMENT II
"NON-OWNED AUTOMOBILES

"Such insurance as is afforded by this policy under coverages A, B, C, D, D-50, F, G, H and M with respect to the automobile applies to the use of a non-owned automobile by the named insured or a relative, and any other person or organization legally responsible for the use by the named insured or relative of an automobile not owned or hired by such other person or organization.

" . . .

"DEFINITIONS—INSURING AGREEMENTS I AND II

" . . .

"Relative—means a relative of the named insured who is a resident of the same household.

" . . .

"Non-Owned Automobile—Under coverages A, B, C and M means an automobile or trailer not owned by the named insured or any relative, other than a temporary substitute automobile; . . ."

The sole question presented by appellant's assignments of error and its argument thereunder is whether, upon the facts as found by the trial court, Charles Wesley Thompson, at the time of the accident, was within contemplation

of the insuring agreement a "resident of the same household" as the assureds.

Appellant relies principally upon the California cases of *Island v. Fireman's Fund Indem. Co.,* 30 Cal. (2d) 541, 184 P. (2d) 153, 173 A.L.R. 896 and *Shapiro v. Republic Indem. Co. of America,* 52 Cal. (2d) 437, 341 P. (2d) 289.

In each of the cited cases, the California court was construing *exclusionary* provisions under a "drive other cars" clause contained in an automobile liability policy. The result of the court's holding, in each case, that a minor in the armed services was not a "member of" or a "resident in" the insureds' household, *was to afford* coverage under the policies in question.

Respondent, on the other hand, relies upon *Cal-Farm Ins. Co. v. Boisseranc,* 151 Cal. App. (2d) 775, 312 P. (2d) 401, in which case the California court had before it a clause, in a comprehensive liability policy, *extending* coverage to the named insured and relatives "if residents of his household." *In affording coverage* under the policy in the *Cal-Farm* case, the California court held a minor, whose physical residence by divorce decree had been placed with the mother, to be a "resident" of the divorced father's household within contemplation of the policy provisions. In so doing, the court distinguished the *Island v. Fireman's Fund Indem. Co.* case and focused attention upon the interpretative approach to *exclusionary* and *extension* clauses, stating (p. 781):

"The parties refer to many cases which discuss the terms here involved. [Citing cases.] While the cases do not all appear consistent, it can generally be stated that insofar as the cases involve insurance policies, *they can be roughly divided into cases involving policies excluding from coverage of the policies members of the insured's household, and those extending coverage to such persons.* Both attempt to apply the rules of construction above discussed. *As a result, in the extension cases the questioned terms are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation. This is necessary because in both situations the courts favor an interpretation in favor of coverage.* [Italics ours.] This was illustrated by the case of *Island v. Fireman's Fund Indem.*

*Co.,* 30 Cal. 2d 541 [184 P. 2d 153, 173 A.L.R. 896]. The court in that case was interpreting an automobile policy *excluding* from coverage any car operated by the named insured and furnished to him by a 'member of his household.' It was held that a son of the named insured, who admittedly was a 'member of his household' prior to entry into the military service, was not such a member at the time of the accident. In this way the policy was interpreted most strongly against the insurance company so as to impose liability upon it. Inconsistent, insofar as the definition of the terms are concerned, but reconcilable in result, is *Central Manufacturers' Mut. Ins. Co. v. Friedman,* 213 Ark. 9 [209 S. W. 2d 102, 104], where a minor son serving in the armed forces was held to be a 'member of the insured's family of the same household' within the meaning of a personal property policy *extending* coverage to such persons. The common denominator in the two cases is that in both, the court upheld the rule that the language should be interpreted most strongly against the insurance company so as to hold that the policy covered the persons involved.
"  .   .   .

"These cases illustrate that the interpretation of the terms involved is not fixed but varies according to the circumstances of the case. They also demonstrate that most courts will interpret the terms so as to extend the coverage if this can be done under any reasonable interpretation of the facts."

The touchstone of the California court's interpretative approach, as expressed in the *Cal-Farm* case, is that the phrase "resident of the same household" has no absolute or precise meaning, and, if doubt exists as to the extent or fact of coverage, the language used in an insurance policy will be understood in its most inclusive sense.

At least one other appellate court has applied the reasoning of the *Cal-Farm* case upon facts analogous to the instant case. In *Appleton v. Merchants Mut. Ins. Co.,* 16 App. Div. (2d) 361, 365, 228 N.Y.S. (2d) 442, 446, the appellate division of the New York Supreme Court analyzed the case authority as follows:

"The cases cited by the insurer fit into the category of exclusion cases, namely, where a resident of the household is excluded from coverage. On the facts of many of them, the courts have held various individuals not to be

'residents' of the household (e.g., *Island v. Fireman's Fund Ind. Co.*, 30 Cal. 2d 541; *Lumbermens Mut. Cas. Co. v. Pulsifer*, 41 F. Supp. 249). There are of course exceptions to this general trend, as when a person is held to be a resident of the household and coverage is denied on the theory that to hold otherwise would open the doors to collusion (e.g., *Tomlyanovich v. Tomlyanovich*, 239 Minn. 250; *State Farm Mut. Aut. Ins. Co. v. James*, 80 F. 2d 802; see, also, *Senn v. State Farm Mut. Ins. Co.*, 287 S. W. 2d 439 [Ky.]; *Rathbun v. Aetna Cas. & Sur. Co.*, 144 Conn. 165).

"Cases representative of the finding that one is a resident of the household for purposes of upholding coverage are numerous (see, e.g., *American Serv. Mut. Ins. Co. v. Pugh*, 271 F. 2d 174; *Cal-Farm Ins. Co. v. Boisseranc*, *supra* [151 Cal. App. (2d) 775, 312 P. (2d) 401]; *Mazzilli v. Accident & Cas. Ins. Co.*, 35 N. J. 1). There are also a number of cases which deal with the question of coverage when there is a temporary absence such as a son in the service or away at college. While the language of the policies in these cases is slightly different from that in the present case, the principle remains the same (see, e.g., *Barker v. Iowa Mut. Ins. Co.*, 241 N. C. 397; *Central Mfrs. Mut. Ins. Co. v. Friedman*, 213 Ark. 9; *Mississippi Benevolent Assn. v. Majure*, 201 Miss. 183). Also, in some of them, the precise legal theory used by the court is not clear, aside from construing the phrase in question in favor of coverage. However, what is clear is that, where the absence from home is a temporary one, the courts have declined to require that the person seeking coverage dwell under the same roof at the time of the accident to be a 'resident of the household' or 'member of the family' to come within the meaning of some other similar phrase to effect coverage.

"There is no doubt that in the present case the physical absence of plaintiff from the family home was temporary. In the present state of world affairs, there are few families which do not at sometime have children temporarily absent serving their country. Many families also have children temporarily away at college or on vacation trips. These are everyday facts of life of which insurance companies are, or should be, cognizant when writing policies; this is especially true when they label and sell them as 'Family' policies. Restriction of coverage could have been stated very simply, if that was the intent of the draftsman."

Appellant contends, however, that by his marriage Charles Wesley Thompson became emancipated, within

contemplation of the policy provision in question. In this respect, the trial court found that young Thompson had not, during his period of service or marriage, acquired a residence other than that of his parents. This finding was premised upon evidence indicating that young Thompson kept his personal belongings at his parents' home, invariably returned there on furloughs, spent but little time with his wife (who was 14 years of age at the time of marriage and lived with her parents thereafter), and finally acquiesced in an annulment.

We are satisfied, as was the trial court, that under such circumstances young Thompson's residence continued with his parents. *American Ser. Mut. Ins. Co. v. Pugh*, 271 F. (2d) 174.

The trial court correctly applied the California law. Judgment is affirmed.

OTT, C. J., DONWORTH, FINLEY, and WEAVER, JJ., concur.