178 So.2d 238 (1965)
248 La. 246
Archie G. TAYLOR
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY et al.
No. 47693.
Supreme Court of Louisiana.
July 2, 1965.
Rehearing Denied September 30, 1965.
*239 Gist, Gist, Methvin & Trimble, by DeWitt T. Methvin, Jr., Alexandria, for defendant-relator.
James A. Pharis, Jr., of Pharis & Pharis, Alexandria, for plaintiff-respondent.
HAMLIN, Justice.
In the exercise of our supervisory jurisdiction (Art. VII, Sec. 11, La.Const. of 1921) we directed Certiorari to the Court of Appeal, Third Circuit, for a partial review of its judgment which affirmed a judgment of the trial court in favor of plaintiff, Archie G. Taylor, and against defendants, Hartford Accident and Indemnity Company and State Farm Mutual Automobile Insurance Company, in the amounts of $5,000.00 and $5,234.15, respectively. In granting the writ, we stated, "Writ granted as to State Farm Mutual Automobile Ins. Co., but limited to a consideration of the question of whether Daniel Taylor was a resident of the household of Garnie Taylor in Arkansas at the time of the accident (Assignment of Error No. 1.) In all other respects the application is denied." 247 La. 681, 173 So.2d 543; La.App., 171 So. 2d 816; La.App., 158 So.2d 413.
The facts leading to this proceeding are not in dispute. During the early morning hours of September 13, 1962, plaintiff and his nephew, Daniel Taylor, born in 1943, departed from plaintiff's residence in Pineville, Louisiana, to go to their place of employment near New Roads, Louisiana. Daniel drove plaintiff's 1957 Ford Ranchero pickup truck with his uncle's consent, while plaintiff slept on the seat next to him. Some few miles west of Marksville, Louisiana, Daniel apparently went to sleep and lost control of the vehicle. He and plaintiff were awakened by the swerving motion of the truck, which overturned despite their attempts to regain control of it. As a result, plaintiff was seriously injured.
At the time of the accident, Daniel, the son of Garnie William Taylor of Camden, Arkansas, was an unemancipated minor, nineteen years of age, having resided with his parents all of his life; he had graduated from high school in Arkansas during May, 1962, and wanted to go to work. During the early part of July, 1962, Archie Taylor, a drag-line operator, asked Daniel to come to Louisiana and work with him as an oiler. Daniel accepted his uncle's invitation and came to Louisiana; he lived with his uncle but paid his own way; he secured employment with his uncle's employer, his work being under his uncle's supervision. He brought to Louisiana those clothes that he needed for work and visited his parents several times when he had time off.
Plaintiff brought this suit for damages against his own liability insurer, Hartford Accident and Indemnity Company, and against State Farm Mutual Automobile Insurance Company (Hereinafter referred to as State Farm), the liability insurer of Garnie W. Taylor, Daniel's father.
Relying on the case of Watkins v. Cupit, 130 So.2d 720, both the trial court and the Court of Appeal held that Daniel's legal residence was that of his parents, Camden, Arkansas, and that State Farm was liable to plaintiff in damages for the negligence of his nephew.
*240 State Farm argues in this Court that the Court of Appeal erred in holding that Daniel Taylor was not a member of the same household as plaintiff with whom he was admittedly living and working and in holding that Daniel Taylor was a resident of the same household as his father in Arkansas.
Insofar as this limited writ is concerned, the pertinent provisions of State Farm's family type policy provide:
"POLICY NUMBER POLICY PERIOD (Month-Day-Year)
 291 359-F30-04 06-26-58 to 12-30-58
"Named Insured COVERAGES AS DEFINED IN POLICY
 TAYLOR, GARNIE W AB C D G$50
 ROUTE 1 BOX 192A
 LOUANN ARK
* * * * * * * * * * *
 "DEFINITIONSINSURING AGREEMENTS I AND II
Named Insuredmeans the individual so designated in the declarations and
also includes his spouse, if a resident of the same household.
Insuredunder coverages A, B, C and M, the unqualified word `insured'
includes (1) the named insured, and also includes (2) his relatives, (3)
any other person while using the automobile, provided the actual use of the
automobile is with the permission of the named insured, and (4) under coverages
A and B any person or organization legally responsible for the use
thereof by an insured as defined under the three subsections above.
Relativemeans a relative of the named insured who is a resident of the
same household.
Automobilemeans the private passenger automobile, utility automobile or
trailer described in the declarations and includes a temporary substitute
automobile and a newly acquired automobile, and under coverages A, B, C
and M a trailer owned by the named insured.
* * * * * * * * * *
Private Passenger Automobilemeans a private passenger, station wagon or
jeep type automobile.
Utility Automobilemeans an automobile with a load capacity of fifteen
hundred pounds or less of the pick-up body, sedan delivery or panel truck
type.
* * * * * * * * * * *
 "INSURING AGREEMENT IINON-OWNED AUTOMOBILES
Such insurance as is afforded by this policy under coverages A, B, Division
2 of C and M, D, D-50, F, G and H with respect to the automobile applies
to the use of a non-owned automobile by the named insured or a relative,
and any other person or organization legally responsible for the use by the
named insured or relative of an automobile not owned or hired by such
other person or organization.
Insuring Agreement II does not apply:
(1) to a non-owned automobile (a) registered in the name of the named
insured or a relative, (b) hired by or furnished to the named insured or a
relative for regular use, or (c) while used in the business or occupation of
such named insured or relative * * *."
*241 Daniel Taylor, being his son, was a relative of Garnie W. Taylor at the time the instant accident occurred. Posed for our determination, therefore, is the question of whether under the facts as stated supra he was "a resident of the same household" as that of Garnie W. Taylor, the named insured under the instant family automobile liability policy.
In 21 La.L.Rev., pp. 835, 836, the author (Gerald L. Walter, Jr.) well states:
"The guiding principle of the family automobile policy `is to cover virtually every risk contingency which might reasonably occur in a family's use of automobiles.' In general, the policy attempts to provide protection for the insured against liability growing out of the use of an automobile without regard to the particular automobile being used at the time when liability attaches. At the same time certain limitations are imposed for the purpose of enabling the insurer to set premiums which will not make the cost of such a policy prohibitive. Broadening of coverage, while maintaining reasonable premiums, has been accomplished through such provisions as the `non-owned automobile,' `owned automobile,' and `temporary substitution' provisions."[1]
The instant insurance policy constituted a contract between Garnie W. Taylor and State Farm and was the law between them. Harmon v. Lumbermens Mutual Casualty Company, 247 La. 263, 170 So.2d 646. The policy was issued in 1958, and no contention has been raised that it was not in force and that premiums were not timely paid at the time of the accident. The words used in the policy are to be understood in the common and usual signification, without attending so much to grammatical rules as to general and popular use. LSA-C.C. Art. 1946. "Also, all ambiguities in the provisions of an insurance policy are to be construed in favor of the insured and against the insurer, subject to the qualification that if the intent of the policy is clearly evidenced by the terms of the contract, then the policy must be given a reasonable interpretation with relation to such intent." Liprie v. Michigan Millers Mutual Insurance Co., La.App., 143 So.2d 597. See, Hemel v. State Farm Mut. Auto. Ins. Co., 211 La. 95, 29 So.2d 483.
On September 13, 1962, Daniel Taylor was a minor under both Louisiana law and Arkansas law.[2] His domicile was that of his father. LSA-C.C. Art. 39; Toca v. Rojas, 152 La. 317, 93 So. 108;[3] Blackburn v. Blackburn, La.App., 168 So. 2d 898; Graves v. Graves, La.App., 122 So. 2d 350; Oglesby v. Turner, 127 La. 1093, 54 So. 400; In Re Watson, D.C., 99 F. Supp. 49; Central Manufacturers' Mut. Ins. Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557; Cf. Bell v. Silas, 223 Ark. 694, 268 S.W.2d 624; Johnson v. Taylor, 140 Ark. 100, 215 S.W. 162. Fathers and mothers, by the very *242 act of marrying, contract together the obligation of supporting, maintaining, and educating their children. LSA-C.C. Art. 227. The father, or after his decease, the mother, are responsible for the damage occasioned by their minor or unemancipated children, residing with them, or placed by them under the care of other persons, reserving to them recourse against those persons. LSA-C.C. Art. 2318. Watkins v. Cupit, La.App., 130 So.2d 720; 36 Tu.L. Rev. 340; LaRue v. Adam, La.App., 59 So.2d 839.
Residence and domicile are not synonymous terms. LSA-C.C. Art. 38; Oglesby v. Turner, 127 La. 1093, 54 So. 400; Foreman v. Jordan, La.App., 131 So. 2d 796; Harrison v. Commission Council of Bogalusa, La.App., 169 So.2d 159; Stephens v. AAA Lumber Company, 238 Ark. 842, 384 S.W.2d 943; Vehrs v. Jefferson Insurance Company, La.App., 168 So.2d 873, 877; In Re Watson, D.C., 99 F.Supp. 49. Even though a person, which could include a child, might have several residences, despite the fact that he has one domicile, the legal residence of an unemancipated minor (with which we are herein concerned) is that of his father unless changed by law. McInnis v. Terry, La.App., 121 So.2d 329; Watkins v. Cupit, La.App., 130 So.2d 720.[4] This is reasonable and understandable because, as stated supra, the father has numerous obligations to his child (including his support and maintenance), is invested with parental authority, LSA-C.C. Art. 216, and is responsible in great measure for his actions.
The instant policy merely recites "resident" and not "legal resident." "Whether a person is or is not a resident of a particular place is a question of law and fact, to be determined from all the facts of each particular case, but mere isolated facts cannot be relied on wholly to determine the question." 77 C.J.S. Resident p. 307. In State Farm Mutual Automobile Ins. Co. v. Walker, 334 S.W.2d 458, the Texas Court of Appeals, interpreted the word "resident", employed in a policy similar to the instant one, as follows:"* * * the term `resident' should be construed to mean `member', or `member of the same family'. As applied to a `family', a person is either a member of it or is not a member of it, for it is a personal relationship. It would not be possible to be a `resident' of a family. It is possible to reside in or be a `resident' `in a house', but not `of a house.' One may be a `member' of a family or organization or group, but not of a building or of anything inanimate." 77 C.J.S. Resident p. 307, states that, "As a noun, `resident' is defined as meaning one who has a residence, as distinguished from one who has a place of business, or a place where he earns his living; one who abides, or dwells, or lives in a particular place, as distinguished from one who merely works in a certain locality, or in a certain place of business; one who lives at a place and no present intention of removing therefrom; * * * one who resides or dwells in a place for a period of more, or less, duration; * * *."
We next approach a determination of the meaning of the phrase, "of the same household." We find the case of Central Manufacturers' Mut. Ins. Co. of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557, very helpful. Therein, plaintiff brought an action in Arkansas on a policy of theft insurance on behalf of his minor son, nineteen years of age, who suffered a theft while he was in the Army and located in a state other than Arkansas. Holding that plaintiff could recover, the Court stated:
"At the time of the property loss here, Benno was a minor and it was the *243 duty of the parent to support and educate him so long as he remained a member of his family, * * *
"The domicile of Benno was with his father, * * * Domicile includes residence and place of abode. Webster defines `domicile': `A place of residence, either of an individual or a family; a dwelling place; an abode; a home or habitation.' Residence and place of abode are synonymous, * * The Constitution of this state provides: Art. XIX, Sec. 7: `Absence on business of the State of the United States, or on a visit * * * shall not cause a forfeiture of residence once obtained.'
"* * *
"We think the word `household' as used in the section of the policy, supra, meant domicile, residence or place of abode. `Household' is defined in 2 Bouv.Law Dict., Rawle's Third Revision, page 1462, as follows: `Those who dwell under the same roof and constitute a family. Webst. But it is not necessary that they should be under a roof, or that the father of the family be with it, if the mother and children keep together so as to constitute a family; * * *
"We hold that Benno Friedman was a `member of the insured's family of the same household' and was therefore protected by the policy when the theft occurred, * * *"
Webster's New World Dictionary, College Edition, defines "household" as follows: "1. all the persons who live in one house; family, or family and servants. 2. the home and its affairs." 41 C.J.S. Household p. 367, states that, "Household" as a noun is a word of well-known legal meaning, being the definition of the Latin word "familia." We have read many cases in which the word "household" has been interpreted; some interpretations are that in order to be a member or resident of the same household, one must live under the same roof as the head of the house; others are to the effect that if one is a member of a family, it is not necessary that he be present under the family roof at all timestemporary absence does not preclude his being a member of the household. See, Home Ins. Co. v. Pettit, 225 Ala. 487, 143 So. 839; American Universal Insurance Company v. Thompson, 62 Wash.2d 595, 384 P.2d 367; Cal-Farm Insurance Company v. Boisseranc, 151 Cal.App.2d 775, 312 P.2d 401; State Farm Mut. Automobile Ins. Co. v. James, 4 Cir., 80 F.2d 802; Fidelity & Casualty Co. of New York v. Jackson, D.C., 194 F.Supp. 431; State Farm Mutual Automobile Ins. Co. v. Walker, Tex.Civ.App., 334 S.W.2d 458; Travelers Indemnity Co. v. American Indemnity Co., Tex.Civ.App., 315 S.W.2d 677; Bannerman v. St. Paul Mercury Indemnity Company, La.App., 144 So.2d 167; Leteff v. Maryland Casualty Company, La. App., 91 So.2d 123.
We conclude that under the facts of the instant case, Daniel Taylor's legal residence was that of his father, Garnie William Taylor, Camden, Arkansas. Daniel was a member of his father's family; there had been no divestiture of relationship; and, he visited his parents. Although he did want to work with his uncle, there is no showing that Daniel was not free to go home at any time he pleased, and there is also no showing that his parents were unwilling or were not obligated to support him. There is no conclusive evidence of record that Daniel had made a permanent residence in Louisiana at the time of the accident.
We conclude that while he was an unemancipated minor Daniel had to be considered as temporarily absent from his parent's home. We find that it was not necessary that he be under his parents' roof at all times in order to be a "resident of the same household." We further find that under the facts as presented, Daniel *244 Taylor was a "resident of the same household" as the insured, Garnie W. Taylor.
Assignment of Error No. 1 is therefore without merit.
For the reasons assigned, the judgment of the Court of Appeal, Third Circuit, is affirmed. All costs in this Court to be paid by State Farm Mutual Automobile Insurance Company.
FOURNET, C. J., concurs.
HAMITER, Justice (dissenting).
I am unable to subscribe to the interpretation placed by the majority of the court on the pertinent portions of the insurance policy with which we are concerned. While recognizing that the result reached must depend on a fair interpretation of the terms of the policy which are to be understood in their common and usual signification, the opinion, nevertheless, is based (not on the terms of the policy) on legal concepts relative to domicile, duty of support, and liability of a parent for his minor's torts. The policy provisions relate to none of these. Those persons insured under the contractural definitions are relatives of the named insured who are residents of the same household, this regardless of whether or not they are technically domiciled with him, he is bound to support them, or is liable for their tortious actions.
The cases cited in the majority opinion are not analogous to the instant matter because of their factual differences. In many of them the persons sought to be included in insurance coverage as members of the respective households of the named insureds were clearly in the temporarily absent category: members of the armed services, traveling salesmen, etc. In one of them (Cal-Farm Insurance Company v. Boisseranc, 151 Cal.App.2d 775, 312 P.2d 401), incidentally, the court held that, despite the fact that the legal domicile of the minor involved was that of his mother (who had been awarded permanent custody in divorce proceedings), he was a resident of the household of his father because of his actually living with the latter.
The cited cases involving men in the armed services are clearly inapplicable. As shown by a review of the entire opinion of the court in Central Manufacturers' Mutual Insurance Company of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557, which is relied on by the majority opinion and a part of which is quoted therein, the residence status of military personnel is in a class by itself and is particularly protected in many instances by special enactments. It is so protected in Arkansas by constitutional mandate, as is shown by the opinion.
The word "Household" is defined in Webster's Third New International Dictionary as: "2. those who dwell under the same roof and compose a family: a domestic establishment; specif. a sole unit comprised of those living together in the same dwelling place."
Moreover, in view of the well recognized distinction between domicile and residence, as is set forth in the majority opinion, I think that reference in the policy to the latter rather than the former has special significance, particularly since the instant contract provision is limited by the specification of "a resident of the same household". Too, in interpreting the provision resort may also be had to other portions of the policy. In this connection it is to be noted that the named insured "also includes his spouse, if a resident of the same household." Clearly this can have but one meaning: the husband and wife must actually be living in the same house. Surely, the contract is to be interpreted in the same manner with regard to "relatives".
Also, it is my view that the majority opinion reaches an undesirable result in that, while it proposes to afford broader *245 coverage under the policy, actually it seems to decrease the coverage. I agree that the policy was designed to give the broadest sort of coverage to all relatives of the named insured (which includes his wife) residing with him in the same household. This would apply, clearly, to nieces and nephews, brothers or sisters, etc. But the majority opinion reduces that coverage to those who are only legally domiciled with him. Thus, if the named insured had living in his home minor nieces or nephews, brothers or sisters, or any minor relative other than a son or daughter, such relatives would not, under the majority's interpretation, be included under the policy as residents of the insured's household; rather they would be considered as residing in the households of their respective parents.
The case of Toca v. Rojas, 152 La. 317, 93 So. 108, also cited by the majority, is not controlling here. Therein the court was considering the question of legal liability of a father for his son's tortious conduct. That liability necessarily depends on legal concepts of parental control and responsibility, only one of which relates to residence. In the instant case, however, we are not called on to determine the tort responsibility of Daniel Taylor's father. The issue is whether or not Daniel is an insured as defined in the contract of insurance. The fact that Daniel's father might be responsible for his torts does not mean that when Daniel was driving the nonowned automobile he was an insured under the terms of the contract before us. It is only under the contract that liability can attach to the present defendant insurance company.
The record in the instant case makes it abundantly clear to me that Daniel was actually residing and living with his uncle in Louisiana when the accident occurred on September 13, 1962, and that such residence was not of a transient character. He had been there for some two months prior to that time; he had come to work with and for his uncle and to learn his uncle's business; and he had no intention of again living in his father's home. Indeed, Daniel's conduct during the ensuing year confirms such conclusion. He worked "seven days on and seven days off" at his job; and yet, during all of a period of over a year and until he married in the fall of 1963, he had visited his father on only two perhaps threeoccasions.
Under the circumstances disclosed by the record it appears to me that the case of Oglesby v. Turner et al., 127 La. 1093, 54 So. 400 is pertinent authority for holding that Daniel was a resident of his uncle's rather than of his father's household. Therein the court held that an 18 year old boy who actually lived and worked in Orleans Parish "resided" in that parish so as to be a competent witness to a will drawn there, this despite the fact that his legal domicile was in Lafourche Parish where his father lived.
For the foregoing reasons I respectfully dissent.
HAWTHORNE, Justice (dissenting).
Under the undisputed facts of this case Daniel Taylor is not an insured within the clear and unambiguous provisions of the policy issued to his father, Garnie Taylor, a resident of Camden, Arkansas.
The pertinent provisions of the policy read:
"* * * the unqualified word `insured' includes (1) the named insured, and also includes (2) his relatives * * *.
"`Relative' means a relative of the named insured who is a resident of the same household."
The facts disclose that Daniel Taylor left his father's home in Camden, Arkansas, to get a job and earn his own living, and at the time of the accident he was working *246 with and for his uncle, Archie Taylor, in whose home he lived at Pineville, Louisiana; and it was his intention to remain with his uncle for an indefinite period.
Under these facts Daniel was not a resident of the "household" of the named insured, Garnie Taylor. The word "household" has a definite and unambiguous meaning, as follows:
"Household * * * 2. Those who dwell under the same roof and compose a family * * *." Webster's New International Dictionary (1938).
The majority has completely written out of the contract of insurance the term "household".
I respectfully dissent.
McCALEB, Justice (concurring).
As I see it, the important question in this case is whether the words as used in the policy coverage of "a resident of the same household" means residents of the same household factually or residents of the same household legally. If the former, no coverage is provided, but, if the latter, then the insurer is liable as concluded by the majority opinion. The result is to be reached, of course, by interpreting the intent of the parties to the contract. If their intent is doubtful by reason of the choice of language used by the insurer, then the conclusion here is proper because ambiguities in policies are to be construed against the insurer. For my part, I cannot say with any degree of certainty that the language employed by the insurer is so clear and unequivocal as to evince an intention that the relatives for whom insurance is provided are only those relatives actually and factually living in the home of the named insured at the time of the accident. Because of this, I feel that the result reached is correct.
I respectfully concur.
NOTES
[1] Both the trial court and the Court of Appeal determined that the car being driven by Daniel Taylor did not fall within the exclusions of the instant policy.
[2] "Minors are those of both sexes, who have not yet attained the age of one and twenty years complete; and they remain under the direction of tutors till that age. When they have attained that age, then they are said to be of full age." LSA-C.C. Art. 37.

"Males of the age of twenty-one [21] years, and females of the age of eighteen [18] years, shall be considered of full age for all purposes, and, until those ages are attained, they shall be considered minors." Arkansas Statutes, § 57-103.
[3] In Toca v. Rojas it was pertinently stated:"Domicile is declared to be that place in which a person makes his habitual residence (C.C. 38), and the domicile of the father, when living, and of the mother when the father is dead, is that of the minor not emancipated (C.C. 39). A child cannot quit the paternal house without the permission of his father and mother, who have a right to correct him, provided it be done in a reasonable manner. C.C. 218."
[4] In Watkins v. Cupit the Court stated: "We are of the same opinion. As a matter of law, the residence of an unemancipated minor is that of his father unless changed in some manner prescribed by law. McInnis v. Terry, La. App., 121 So.2d 329, LSA-Civil Code Article 39. * * *"