HAMITER, Justice
(dissenting).
I am unable to subscribe to the interpretation placed by the majority of the court on the pertinent portions of the insurance policy with which we are concerned. While recognizing that the result reached must depend on a fair interpretation of the terms of the policy which are to be understood in their common and usual signification, the opinion, nevertheless, is based (not on the terms of the policy) on legal concepts relative to domicile, duty of support, and liability of a parent for his minor’s torts. The policy provisions relate to none of these. Those persons insured under the contractural definitions are relatives of the named insured who are residents of the same household, this regardless of whether or not they are technically domiciled with him, he is bound to support them, or is liable for their tortious actions.
The cases cited in the majority opinion are not analogous to the instant matter because of their .factual differences. In many of them the persons sought to be included in insurance coverage as members of the respective households of the named insureds were clearly in the temporarily *263 absent -category: members of the armed services, traveling salesmen, etc. In one of them (Cal-Farm Insurance Company v. Boisseranc, 151 Cal.App.2d 775, 312 P.2d 401), incidentally, the court held that, despite the fact that the legal domicile of the minor involved was that of his mother (who had been awarded permanent custody in divorce proceedings); he was a resident of the household of his father because of his actually living with the latter.
The cited cases involving men in the armed services are clearly inapplicable. As shown by a review of the entire opinion of the court in Central Manufacturers’ Mutual Insurance Company of Van Wert, Ohio v. Friedman, 213 Ark. 9, 209 S.W.2d 102, 1 A.L.R.2d 557, which is relied on by the majority opinion and a part of which is quoted therein, the residence status of military personnel is in a class by itself and is particularly protected in many instances by special enactments. It is so protected in Arkansas by constitutional mandate, as is shown by the opinion.
The word “Household” is defined in Webster’s Third New International Dictionary as: “2. those who dwell under the same roof and compose a family: a domestic establishment; specif, a sole unit comprised of those living together in the same dwelling place.”
Moreover, in view of the well recognized distinction between domicile and residence, as is set forth in the majority opinion, I think that reference in the policy to the latter rather than the former has special significance, particularly since the instant contract provision is limited by the specification of “a resident of the same household”. Too, in interpreting the provision resort may also be had to other portions of the policy. In this connection it is to be noted that the named insured “also includes his spouse, if a resident of the same hov.sehold.” Clearly this can have but one meaning : the husband and wife must actually be living in the same house. Surely, the contract is to be interpreted in the same manner with regard to “relatives”.
Also, it is my view that the majority opinion reaches an undesirable result in that, while it proposes to afford broader coverage under the policy, actually it seems to decrease the coverage. I agree that the policy was designed to give the broadest sort of coverage to all relatives of the named insured (which includes his wife) residing with him in the same household. This would apply, clearly, to nieces and nephews, brothers or sisters, etc. But the majority opinion reduces that coverage to those who are only legally domiciled with him. Thus, if the named insured had living in his home minor nieces or nephews, brothers or sisters, or any minor relative other than a son or daughter, such relatives would not, under the majority’s interpretation, be included under the policy as residents of *265 the insured's household; rather they would be considered as residing in the households of their respective parents.
The case of Toca v. Rojas, 152 La. 317, 93 So. 108, also cited by the majority, is not controlling here. Therein the court was considering the question of legal liability of a father for his son’s tortious conduct. That liability necessarily depends on legal concepts of parental control and responsibility, only one of which relates to residence. In the instant case, however, we are not called on to determine the tort responsibility of Daniel Taylor’s father. The issue is whether or not Daniel is an insured as defined in the contract of insurance. The fact that Daniel’s father might be responsible for his torts does not mean that when Daniel was driving the non-owned automobile he was an insured under the terms of the contract before us. It is only under the contract that liability can attach to the present defendant insurance company.
The record in the instant case makes it abundantly clear to me that Daniel was actually residing and living with his uncle in Louisiana when the accident occurred on September 13, 1962, and that such residence was not of a transient character. He had been there for some two months prior to that time; he had come to work with and for his uncle and to learn his uncle’s business; and he had no intention of again living in his father’s home. Indeed, Daniel’s conduct during the ensuing year confirms such conclusion. He worked “seven days on and seven days off” at his job; and yet, during all of a period of over a year and until he married in the fall of 1963, he had visited his father on only two — ■ perhaps three — occasions.
Under the circumstances disclosed by the record it appears to me that the case of Oglesby v. Turner et al., 127 La. 1093, 54 So. 400 is pertinent authority for holding that Daniel was a resident of his uncle’s rather than of his father’s household. Therein the court held that an 18 year old boy who actually lived and worked in Orleans Parish “resided” in that parish so as to be a competent witness to a will drawn there, this despite the fact that his legal domicile was in Lafourche Parish where his father lived.
For the foregoing reasons I respectfully dissent.