JAMESTOWN MUTUAL INSURANCE COMPANY, A CORPORATION v. NATION-WIDE MUTUAL INSURANCE COMPANY, A CORPORATION; WILLIAM CLARK HAMRICK AND WILLIE BOWLES LOVELACE, DEFENDANTS, AND FRANCES SISK HOLLAND, DALE STEVEN LOVELACE AND EDWIN ELI LOVELACE, ADDITIONAL DEFENDANTS.

(Filed 4 February, 1966.)

**1. Appeal and Error § 49—**

Findings of fact which are supported by competent evidence are conclusive on appeal.

**2. Appeal and Error § 22—**

Exceptions to the refusal of the trial court to find certain facts will not be sustained when some of the findings requested are immaterial and the evidence in regard to the others is conflicting.

**3. Insurance § 63—**

Defense of the action brought by the injured third party against insured does not waive insurer's defense of noncoverage when insurer gives full notice of its reservations of all its rights and defenses.

**4. Insurance § 3—**

When there is no ambiguity, an insurance policy must be construed according to its terms, but when there is ambiguity the policy will be construed in favor of coverage and against insurer who selected its language.

**5. Same; Contracts § 12—**

In the construction of contracts, words which are in common use will be given their ordinarily accepted meaning in the absence of evidence disclosing an intent that they be given their technical or legal meaning.

**6. Insurance § 57— Evidence held to support conclusion that son was a "resident" of his father's home within coverage of liability insurance.**

The policy in suit covered insured and any relatives resident in the same household. The evidence tended to show that insured's twenty-nine year old son, after a marriage and separation, service in the Army, and employment in other municipalities, returned to his father's home, intending to remain there an indefinite time until he obtained living quarters more

INSURANCE CO. v. INSURANCE CO.

convenient to his new employment. *Held:* The evidence is sufficient to sustain a finding that the son was a resident in insured's home within the meaning of the policy.

**7. Insurance § 56—**

The policy in suit excluded coverage of the insured's vehicle while used in the automobile business by insured or any other business or occupation of insured. The accident in suit occurred while an insured under the policy was driving the car as a prospective purchaser from an automobile dealer. *Held:* The vehicle was not being used in the automobile business by insured, and therefore the exclusion does not apply.

APPEAL by defendants from *Riddle, S.J.,* 4 January 1965 Regular Civil "B" Session of MECKLENBURG.

This is a suit for a declaratory judgment in which Jamestown Mutual Insurance Company seeks a determination of the proper construction and effect of a policy of automobile liability insurance issued by it to Tedder Motor Company, in the light of a policy issued by the defendant Nationwide Mutual Insurance Company to W. F. Hamrick, and a determination of the rights and liabilities of the parties under the two policies.

While both policies were in force, William Clark Hamrick, son of W.F. Hamrick, driving an automobile owned by Tedder Motor Company, negligently caused it to collide with an automobile operated by Mrs. Lovelace, in which Frances Holland, Dale Lovelace and Edwin Lovelace were passengers. He was driving the automobile with the permission of Tedder Motor Company "to try it out," he then contemplating its purchase. Mrs. Lovelace has recovered a final judgment against him for injuries received by her in the collision. Frances Holland, Dale Lovelace and Edwin Lovelace have made claims against him on account of alleged injuries received by them.

The policy issued by Jamestown to Tedder Motor Company was a "garage liability insurance policy," providing insurance, against liability for personal injury or property damage, to any person using an automobile covered by the policy (including the automobile so driven by William Clark Hamrick) with the permission of Tedder Motor Company. However, the policy provided that the coverage would extend to persons other than the Tedder Motor Company *(i.e.,* William Clark Hamrick) "only if no other valid and collectible automobile liability insurance * * * is available to such person * * *."

At the time of the collision, there was also in effect a policy of automobile liability insurance issued by Nationwide to W. F. Hamrick, father of William Clark Hamrick. This policy provided to any "relative" of W. F. Hamrick, while using an automobile not owned

by him and not regularly furnished for the use of such relative, insurance against liability of the relative for personal injury or property damage due to the operation of such automobile. The Nationwide policy excluded, however, from its coverage a "non-owned automobile while used (1) in the automobile business by the Insured or (2) in any other business or occupation of the Insured," subject to an exception not now material. This policy defined a "relative" to mean "a relative of the Named Insured who is a resident of the same household." The term "Insured" was defined by the policy to include such a "relative."

It is the contention of Nationwide that its policy does not insure William Clark Hamrick against liability for personal injury or property damage arising out of the collision in question because: (1) He was not a "relative" of his father since he was not, at the time of the collision, a resident of the same household with his father, and (2) the automobile which he was driving was a non-owned automobile then being "used in the automobile business."

Jamestown contends that William Clark Hamrick, at the time of the collision, was a resident of the same household as his father and that the automobile belonging to Tedder Motor Company, which he was then driving, though a non-owned automobile within the meaning of the Nationwide policy, was not being "used in the automobile business" by the Insured (*i.e.*, William Clark Hamrick). Therefore, Jamestown contends that the Nationwide policy afforded automobile liability insurance to William Clark Hamrick for personal injury and property damage claims arising out of this collision, and, consequently, no liability for any such claim is imposed upon Jamestown by its policy.

Mrs. Lovelace and Frances Holland contend that both companies are liable, up to the limits of their respective policies, upon their respective claims against William Clark Hamrick.

Edwin Lovelace and Dale Lovelace contend that they are not proper parties to this action and, as to them, it should be dismissed.

William Clark Hamrick filed no answer.

These several contentions present two questions: (1) Was William Clark Hamrick a resident of the household of his father at the time of the collision? (2) Was the automobile which he was driving then being "used in the automobile business by the Insured"?

As to the residence of William Clark Hamrick on 8 February 1963, the date of the collision, his testimony, taken on adverse examination and offered by the plaintiff, may be summarized as follows:

His father, W. F. Hamrick, lived in the same house at Cliffside, in Rutherford County, at all times since a date prior to the birth of

William Clark Hamrick. At the time of the collision, William Clark Hamrick was 29 years of age, married but separated from his wife. He lived with his father until after his 18th birthday. He then went to Virginia to work, remaining there 14 months and then returning to his father's house. He stayed there several months until his marriage, when he again left. Some two years later, he entered the Army and remained in the service for two years. Thereafter, he and his wife lived in Spindale until they separated some 16 months prior to the collision. He then went to Greenville, South Carolina, worked there and stayed in a boarding house for approximately one year. Leaving Greenville, he went to work at the J. P. Stevens mill in Shelby on the first shift. For approximately five weeks he stayed at his sister's home because that was more convenient than his father's home in view of the available transportation to and from his work. He was then transferred to the second shift, which made a different transportation arrangement necessary. Such transportation could be obtained more conveniently if he stayed at his father's home. For this reason he left his sister's home and returned to the home of his father, intending ultimately to find a boarding house in Shelby and get a room there. At the time of the collision, he had found a boarding house in Shelby but had not moved to it and had not decided when he would do so. He had no home of his own and no furniture. His only belongings were his clothes, some of which had been at his father's house since he and his wife separated, he considering that as "the only permanent place" that he had to go back to. His other clothing he carried with him in a suitcase as he moved from place to place. When he left his sister's home, he carried the suitcase containing his clothes with him and went to his father's house to stay until he "could make some better arrangement about living quarters." He did not intend to stay there permanently but he had no fixed plan as to when he would leave. At the time of the collision, he had been so staying in his father's home for approximately two weeks, but had not stayed there every night. He took his meals in his father's home, paying nothing for his board or room or for his laundry, which was put in with that of his parents. He drove his father's automobile occasionally during this period. He used his father's home as his permanent mailing address. He had the full use of the house and slept in the room which he had used when he was growing up. He had no other home and thought of his father's house as his home. He continued to stay in his father's house on this basis for approximately two weeks after the collision, at which time he was imprisoned on charges arising out of the collision.

W. F. Hamrick, called as a witness for the defendant, Nationwide, testified to substantially the same facts concerning the resi-

dence of William Clark Hamrick at the time of the collision.

Concerning his use of the automobile owned by Tedder Motor Company, the testimony of William Clark Hamrick may be summarized as follows, there being no other evidence offered by any party upon this question:

The Tedder Motor Company was in the business of selling automobiles. The car in question was a used car which it had for sale. William Clark Hamrick was considering purchasing it, but wished to try it out and to obtain his father's approval of it. With the permission of the Motor Company's salesman, he drove it away from the company's lot for these purposes. The collision occurred while he was so driving the car.

The action being tried without a jury, the court made findings of fact, substantially in accord with the above summary of the pleadings and evidence, it not being necessary to set forth these findings verbatim. Upon these findings of fact, the court concluded that William Clark Hamrick was a resident of the same household as his father, W. F. Hamrick, that he was not using the automobile of the Tedder Motor Company in the automobile business at the time of the collision, that he was an insured covered by the Nationwide policy, that he was not insured by the Jamestown policy and that the plaintiff is not estopped from denying liability under its policy with respect to any claim arising out of the collision in question.

The court thereupon adjudged and decreed that the Nationwide policy affords coverage to William Clark Hamrick with respect to the various claims arising out of the collision in question, within the limits of liability set out therein, and that the Jamestown policy does not afford coverage to him and neither he nor any other defendant has any claim against Jamestown as a result of such collision.

*Haynes, Graham, Bernstein & Baucom for appellant Nationwide Mutual Insurance Company.*

*Hamrick & Hamrick by J. Nat Hamrick; Joyner & Howison by R. C. Howison, Jr., for defendant appellants Frances Sisk Holland, Dale Steven Lovelace, and Edwin Eli Lovelace.*

*Craighill, Rendleman & Clarkson by Hugh B. Campbell, Jr., for plaintiff appellee.*

LAKE, J. We have considered each of the exceptions of the respective defendants to findings of fact made by the court. There is ample evidence to support each of these findings. They are, therefore, conclusive on appeal. *Mitchell v. Barfield,* 232 N.C. 325, 59

S.E. 2d 810; *Distributing Corp. v. Seawell*, 205 N.C. 359, 171 S.E. 354.

Likewise, there was no error in the refusal of the court to make the findings of fact tendered by Nationwide. Insofar as these differ from the findings made by the court, the proposed findings are not material and, as to each of the proposed findings which do differ somewhat from the findings made by the court, there is conflicting evidence and the court's determination of the fact is binding on appeal.

By undertaking the defense of the actions brought and the other claims made against William Clark Hamrick, the plaintiff did not admit or represent that the policy issued by it afforded insurance coverage to him with reference to this collision. It is not thereby estopped or barred to assert the defenses which it raises in this action. It undertook such defense after Nationwide had denied liability under its policy and after giving full notice to William Clark Hamrick and to Nationwide of its reservation of all of its rights and defenses and of its denial of any liability upon it by virtue of its policy issued to Tedder Motor Company.

We come, therefore, to the two questions: (1) At the time of the collision, was William Clark Hamrick "a resident of the same household" with his father, W. F. Hamrick, within the meaning of the Nationwide policy? (2) At the time of the collision, was William Clark Hamrick using the automobile owned by the Tedder Motor Company "in the automobile business" within the meaning of the Nationwide policy?

Insurance policies must be given a reasonable interpretation and where there is no ambiguity they are to be construed according to their terms. *Huffman v. Insurance Co.*, 264 N.C. 335, 141 S.E. 2d 496. Where there is ambiguity and the policy provision is susceptible of two interpretations, of which one imposes liability upon the company and the other does not, the provision will be construed in favor of coverage and against the company. *Mills v. Insurance Co.*, 261 N.C. 546, 135 S.E. 2d 586.

The words "resident," "residing" and "residence" are in common usage and are found frequently in statutes, contracts and other documents of a legal or business nature. They have, however, no precise, technical and fixed meaning applicable to all cases. As was said by Higgins, J., in *Barker v. Insurance Co.*, 241 N.C. 397, 399, 85 S.E. 2d 305:

> "Residence has been variously defined by this Court. The definitions vary according to the purposes of the several statutes referring to residence and the objects to be accomplished by them. Definitions include 'a place of abode for more than a

temporary period of time;' in other cases the word residence is construed to mean 'domicile,' signifying a permanent and established home. The definitions of residence range all the way between these extremes."

Similarly, Ervin, J. said, in *Sheffield v. Walker*, 231 N.C. 556, 58 S.E. 2d 356:

"[T]he word 'residence' * * * has many shades ʾof meaning, ranging all the way from mere temporary presence to the most permanent abode.

" 'Residence' is sometimes synonomous with 'domicile.' But when these words are accurately and precisely used, they are not convertible terms. *Thayer v. Thayer*, 187 N.C. 573, 122 S.E. 307. 'Residence' simply indicates a person's actual place of abode, whether permanent or temporary; 'domicile' denotes a person's permanent dwelling place, to which, when absent, he has the intention of returning. * * *

"[U]nder these [registration] statutes 'residence' means something more than a mere physical presence in a place, and something less than a domicile. The term clearly imports a fixed abode for the time being."

In *Watson v. R. R.*, 152 N.C. 215, 67 S.E. 502, Clark, C.J., speaking for the Court, said:

"The word 'residence' has, like the word 'fixtures,' different shades of meaning in the statutes * * * and even in the Constitution, according to its purpose and the context. * * *

"Probably the clearest definition is that in *Barney v. Oelrichs*, 138 U.S. 529: 'Residence is dwelling in a place for some continuance of time, and is not synonomous with domicile, but means a fixed and permanent abode or dwelling as distinguished from a mere temporary locality of existence; and to entitle one to the character of a "resident," there must be a settled, fixed abode, and an intention to remain permanently; or at least for some time, for business or other purposes.' To same effect *Coleman v. Territory*, 5 Okl. 201: 'Residence indicates permanency of occupation as distinct from lodging or boarding or temporary occupation. "Residence" indicates the place where a man has his fixed and permanent abode and to which, whenever he is absent, he has the intention of returning.' "

Again, in *Chitty v. Chitty*, 118 N.C. 647, 24 S.E. 517, Faircloth, C.J., said:

" 'Residence' and 'domicile' are so nearly allied to each other in meaning that it is difficult sometimes to trace the shades of difference, although in some respects they are distinct; and the definitions of 'residence' are sometimes apparently conflicting, owing mainly to the nature of the subject with which the word is used, the purpose being always to give to it such meaning and force as will effectuate the intention of that particular statute. The great bulk of cases in the books are cases of statutory residence, as applied to the subjects of voting, eligibility to office, taxation, jurisdiction in divorce proceedings, probate and administrations, limitations, attachments and the like cases. The word is frequently used in the sense of bodily presence in a place, sometimes a mere temporary presence and sometimes the most settled and permanent abode in a place, with all the shades of meaning between those extremes, and also with reference to the distinction between an actual and legal residence. So it seems entirely proper to consider its meaning in connection with the subject matter and the purpose of the statute in which it is found, as well as the relation of the citizen to the subject matter."

In 17A Am. Jur., Domicile, § 9, it is said:

" 'Residence' has many shades of meaning — from mere temporary presence to the most permanent abode. Generally, however, it is used to denote something more than mere physical presence, in which event intent is material. 'Residence,' as a legal term, is something more than the mere actual presence in a locality, even where it is not equivalent to domicile. * * *

"Any place of abode or dwelling place constitutes a residence, however temporary it may be, while the term 'domicile' relates rather to the legal residence of a person or his home in contemplation of law."

In 77 C.J.S., Resident, p. 305, it is said:

"The word 'resident' is in common usage, and many definitions of it are to be found in the decision. It is, nevertheless, difficult to give an exact, or even a satisfactory, definition, for the term is flexible, elastic, slippery, and somewhat ambiguous."

When an insurance company, in drafting its policy of insurance, uses a "slippery" word to mark out and designate those who are insured by the policy, it is not the function of the court to sprinkle sand upon the ice by strict construction of the term. All who may,

by any reasonable construction of the word, be included within the coverage afforded by the policy should be given its protection. If, in the application of this principle of construction, the limits of coverage slide across the slippery area and the company falls into a coverage somewhat more extensive than it contemplated, the fault lies in its own selection of the words by which it chose to be bound.

In the construction of contracts, even more than in the construction of statutes, words which are used in common, daily, nontechnical speech, should, in the absence of evidence of a contrary intent, be given the meaning which they have for laymen in such daily usage, rather than a restrictive meaning which they may have acquired in legal usage. In the construction of contracts the purpose is to find and give effect to the intention of the contracting parties, if possible. Thus the definition of "resident" in the standard, nonlegal dictionaries may be a more reliable guide to the construction of an insurance contract than definitions found in law dictionaries. Webster's New International Dictionary, 2d Ed., contains the following definition:

> "Resident. One who resides in a place; one who dwells in a place for a period of more or less duration. *Resident* usually implies more or less permanence of abode, but is often distinguished from *inhabitant* as not implying as great fixity or permanency of abode."

In *Newcomb v. Insurance Co.*, 260 N.C. 402, 133 S.E. 2d 3, this Court had before it for construction the identical language used in the Nationwide policy. There, a mother had two sons and a daughter. One son was away from home in military service, the other away from home in college. The daughter married. She and her husband stayed in the home of the mother for several months. Then they renovated and furnished another house, belonging to the mother, about one quarter of a mile away, and moved into it. Some months later, following the death of the mother's mother, who had been living with her, the daughter and her husband returned to the mother's home and remained there for three or four months until the son, who was in college, came home. The daughter and her husband then moved back to their own cottage and remained there approximately a month until the son returned to school. They then moved back into the mother's house where they slept, ate and lived until an accident occurred, at all times keeping their own cottage ready for immediate occupancy and intending to return to it when either of the sons came home. Under those circumstances, we held that the mother, the daughter, the son-in-law and the daughter's child were "residents of the same household."

In the *Newcomb* case the daughter had a home of her own to which she intended to return. While the contemplated stay in the mother's home was longer than William Clark Hamrick's contemplated stay in his father's home, both periods were somewhat indefinite and both were, from the first, recognized as temporary arrangements.

The same language used in the Nationwide policy was before the Supreme Court of Washington in *American Universal Insurance Co. v. Thompson,* 62 Wash. 2d 595, 384 P. 2d 367, 370. There, the Washington Court held that a married son, away from his parents' home due to military service and having established no residence elsewhere, was, during such absence, a "resident" of his parents' household. The Court said:

> "While the cases do not all appear consistent, it can generally be stated that, insofar as the cases involve insurance policies, they can be roughly divided into cases involving policies excluding from coverage of the policies members of the insured's household, and those extending coverage to such persons. Both attempt to apply the rules of construction above discussed. As a result, in the extension cases the questioned terms are broadly interpreted, while in the exclusion cases the same terms are given a much more restricted interpretation. This is necessary because in both situations the courts favor an interpretation in favor of coverage. * * *
>
> "The touchstone * * * is that the phrase 'resident of the same household' has no absolute or precise meaning, and, if doubt exists as to the extent or fact of coverage, the language used in an insurance policy will be understood in its most inclusive sense."

William Clark Hamrick had no home of his own. He went back to his father's house, carrying with him all his possessions. His intent was to remain there until living quarters more convenient to his employment could be found and the necessary arrangements made for his occupancy of them. In the meantime, he lived in and used his father's house as he had done when a boy, sleeping there, taking his meals there, having the run of the house, and having his laundry included in the family laundry. For all of this he paid no board. We think it clear that under these circumstances, he was "a resident of the same household" as his father. He is not in the same position as an adult child having a home of his own to which he intends to return and making a mere visit to his parents. Nor is he in the position of a mere roomer or boarder. He was there because he was a member of the family and had no other home.

The second question raised by the contentions of Nationwide turns upon the construction of the following language in its policy:

"Exclusions. 1. This policy does not apply * * * (f) to a non-owned automobile while used (1) in the automobile business *by the Insured* or (2) in any other business or occupation *of the Insured* * * *." [Emphasis added.]

The policy defines "automobile business" to mean "the business of selling, repairing, servicing, storing or parking of automobiles."

It is not enough, in order to bring the automobile, driven by William Clark Hamrick at the time of the collision, within this exclusionary clause of the policy, to show that the owner of the automobile, Tedder Motor Company, was engaged in the business of selling automobiles and that the vehicle was part of its stock in trade. The Tedder Motor Company was not an "Insured" under the Nationwide policy. William Clark Hamrick was the "Insured" in question. The exclusionary clause does not come into operation unless William Clark Hamrick was using the automobile "in the automobile business * * * or in any other business or occupation" of his own. He was not engaged in the "automobile business." He was only a prospective purchaser of the car. He was a textile worker. He was not driving the vehicle in that occupation. It would be a strained construction of the phrase "used in the automobile business" to apply it to a prospective purchaser of a vehicle who is "trying it out" to see if he likes it.

There was no error in the conclusion of the trial court with reference to either of these questions presented by the contentions of the parties.

Affirmed.