[No. 2508-1.   Division One.   March 24, 1975.]

HAWAIIAN INSURANCE & GUARANTY COMPANY, LIMITED, *Appellant*, v. FEDERATED AMERICAN INSURANCE COMPANY *et al, Respondents.*

8

*Lycette, Diamond & Sylvester, Edwin J. Snook,* and *John T. Petrie,* for appellant.

*Murray, Dunham & Waitt* and *Wayne Murray,* for respondents.

CALLOW, J.—Hawaiian Insurance and Guaranty Company, plaintiff, appeals from a declaratory judgment holding that the insurance policy issued by Federated American Insurance Company, defendant, to Michael J. Smith does not afford insurance coverage to Michael Smith and Maria C. Smith, who was then his wife, for damages arising out of a collision between an automobile driven by Maria Smith and one driven by Florence Thompson. The trial court held that Maria Smith, at the time of the accident on October 18, 1971, was not a "resident of the same household" as her husband within the meaning of their Federated American policy.

Maria Smith was driving a station wagon owned by her father, Leon Gutierrez at the time of the accident. Mr. Gutierrez was uninsured. Florence Thompson demanded arbitration before the American Arbitration Association under the uninsured motorist provisions of her insurance policy. The plaintiff, Hawaiian Insurance, insurer of Florence Thompson, commenced action and stayed the arbitration proceedings pending the determination of this declaratory judgment action claiming that Maria Smith was insured through the policy issued by Federated American with Michael J. Smith as the named insured. Federated American, as a defendant in the action brought by Hawaiian Insurance, denied that its policy of insurance covered Maria Smith when the accident occurred.

Michael and Maria Smith were married in 1970. After approximately 1 year, they separated due to marital difficulties. The findings of the trial court set forth the situation upon which it was concluded that Maria Smith was not a

resident of the same household as Michael Smith. Those findings state in part:

## V.

That the FEDERATED AMERICAN INSURANCE COMPANY had issued to MICHAEL J. SMITH as the named insured, its policy No. AC 92385 with a policy period from June 8, 1971 to June 8, 1972, insuring the described vehicle as a 1966 Oldsmobile Cutlass automobile for liability and property damage . . .

## VI.

That under the terms and conditions of the policy issued by the defendant, FEDERATED AMERICAN INSURANCE COMPANY, it was provided as follows:

"III Definition of Insured. (a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes the named insured and, if the named insured is an individual, his spouse if a resident of the same household, and also includes any person while using the automobile and any person or organization legally responsible for the use thereof, provided the actual use of the automobile is by the named insured or such spouse or with the permission of either."

"V. Use of Other Automobiles. If the named insured is an individual or husband and wife and if during the policy period such named insured, or the spouse of such individual if a resident of the same household, owns a private passenger automobile covered by this policy, such insurance as is afforded by this policy under coverages A, B, division 1 of coverage C with respect to said automobile applies with respect to any other automobile, subject to the following provisions: "(a) With respect to the insurance for bodily injury liability and for property damage liability the unqualified word 'insured' includes (1) such named insured and spouse, . . .

"(b) Under division 1 of coverage C, this insurance applies only if the injury results from the operation of such other automobile by such named insured or spouse . . .

## VIII.

That MICHAEL J. SMITH and MARIA C. SMITH lived as husband and wife at the Kent-10 Apartments in Kent, Washington, up to the latter part of August or the first

part of September of 1971. At that time, because of marital problems, they separated. MICHAEL J. SMITH moved to 10433 Kent-Kangley Road, Kent, Washington, from the family apartment taking with him the Oldsmobile automobile insured by FEDERATED AMERICAN INSURANCE COMPANY. He resided in that apartment with his brother. MARIA C. SMITH moved from the family apartment taking her two children and all of her personal effects and the personal effects of the children and moved in with her parents, Mr. and Mrs. Leon Gutierrez, at 10537 S.E. 229th Place, Kent, Washington. At the time of separation there was no definite time set for her return to Michael, her husband. She resided with her parents for approximately three weeks and then she moved into an apartment at 9229 South 244th Street, Kent, Washington, where she lived with her two children and roommates Kathy Vaughn and Jackie Berkiery until on or about October 29, 1971. On that date she was reconciled with her husband, MICHAEL C. SMITH, and then moved in with him in the apartment at 10433 Kent-Kangley Road, where he had resided with his brother. They lived as husband and wife until October 4, 1972, when they were again separated and ultimately divorced.

IX.

MARIA C. SMITH, after separating from her husband, enrolled in the Green River College, giving her address as 9229 South 244th Street, Kent, Washington. She was also employed and gave to her employer the aforementioned address.

X.

MARIA C. SMITH, at the time of the accident, was driving her parents' automobile. She, during the period of time she was separated, had driven that automobile approximately twenty times for her own personal use and to attend school, although on each occasion she had to ask permission to use said automobile, and on several occasions she was refused the use of the automobile as her mother intended to use the same.

XI.

That at the time MICHAEL J. SMITH and MARIA C. SMITH separated because of marital problems there was no agreement to return and live together again as husband and wife. Both were working and essentially independent.

The assignments of error challenge the findings of fact of the trial court, the failure to enter a proposed finding and the court's conclusions that Maria Smith was not a resident of the same household as the insured Michael Smith at the time of the accident and, therefore, coverage was not provided under the Federated American policy.

The findings of fact of a trial court are accepted as verities on appeal if there is substantial evidence to support them. *Hays Merchandise, Inc. v. Dewey*, 78 Wn.2d 343, 474 P.2d 270 (1970); *Enterprise Timber, Inc. v. Washington Title Ins. Co.*, 76 Wn.2d 479, 457 P.2d 600 (1969). If findings of fact are actually conclusions of law, they will be interpreted as such. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972); *Hanson v. Lee*, 3 Wn. App. 461, 476 P.2d 550 (1970); *State v. Dorrough*, 2 Wn. App. 820, 470 P.2d 230 (1970). The oral opinion of a trial court may be used to interpret the trial court's findings of fact if the findings make no statement concerning the subject or are ambiguous or vague. *Bennett Veneer Factors, Inc. v. Brewer*, 73 Wn.2d 849, 441 P.2d 128 (1968). However, the oral decision of the trial court is merged into the trial court's findings and the findings control where a discrepancy between the two is present. *State v. Johnson*, 12 Wn. App. 40, 527 P.2d 1324 (1974); *Diel v. Beekman*, 7 Wn. App. 139, 499 P.2d 37 (1972); *Miller v. Jarman*, 2 Wn. App. 994, 471 P.2d 704 (1970). The evidence supports the findings, insofar as they go, concerning the activities and intentions of Mr. and Mrs. Smith. Albeit, with the foregoing rules of interpretation in mind, the trial court's statement in its oral decision that when the parties separated "they didn't conclude then that they were going to have a divorce or anything else" does cast additional light upon the intentions of the parties when they separated and at the time of the accident. The findings of fact are not in conflict with this observation, and it is of primary import in ascertaining the actual and governing intent of the parties at the essential times mentioned. We turn to a consideration of the conclu-

sions reached upon the formal findings as augmented by the oral decision.

There has been a plethora of cases which have discussed the interpretation of the phrase "resident of the same household" as set forth in insurance policies. Many of these cases deal with whether or not the child of the insured away in college or in the armed services is a resident of the same household and whether the circumstances of certain living arrangements make one a member of the same household or independent of that household.[1] The issue presented is under what circumstances does a spouse who has separated from a named insured and who is not living under the same roof remain a resident of the insured's household.

In *Collins v. Northwest Cas. Co.*, 180 Wash. 347, 352-53, 39 P.2d 986, 97 A.L.R. 1235 (1935), the definition of the term "household" is discussed as follows:

> The word "household" is defined by the dictionaries and the courts as the members of a house collectively; a domestic establishment, . . . The word has been considered as synonymous with the word "family." The word "family" is defined by Webster to be: "The body of persons who live in one house, and under one head or manager." While in a restricted sense the word "family" may be used interchangeably with "household," there is a difference in the ideas suggested by the two words. The word "family" conveys the notion of some relationship—blood or otherwise. . . .
>
> On the other hand, the word "household" is definite in its application. If we speak of the "Adams family," we may have reference to the immediate domestic circle of a particular person of that name, or we may mean all persons of the blood of the second President. If we speak of the "Adams household," however, we can mean only a

---

[1] *Ocean Accident & Guar. Co. v. Schmidt*, 46 F.2d 269 (6th Cir. 1931); *Crossett v. St. Louis Fire & Marine Ins. Co.*, 289 Ala. 598, 269 So. 2d 869 (1972); *Hardware Mut. Cas. Co. v. Home Indem. Co.*, 241 Cal. App. 2d 303, 50 Cal. Rptr. 508 (1966); *Dunn v. Government Employees Ins. Co.*, 229 So. 2d 465 (La. App. 1969); *State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971); *Mazzilli v. Accident & Cas. Ins. Co.*, 35 N.J. 1, 170 A.2d 800 (1961); *American States Ins. Co. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042 (1971).

single domestic establishment whose head is of that name. Our conception of a household involves the existence of a householder as its head, whose personality gives life to that small social unit. Without a householder there is no household.

The term "household" also was discussed in *Crossfield v. Phoenix Ins. Co.*, 77 N.J. Super. 476, 479, 187 A.2d 20, 21 (1962), as follows:

"[H]ousehold" is a term of uncertain meaning. As Justice Francis observed in *Mazzilli v. Acc. & Cas. Ins. Co. of Winterthur*, 35 N. J. 1, 8 (1961), "Household is not a word of art. Its meaning is not confined within certain commonly known and universally accepted limits." He stated, also, "where the policy provision under examination relates to the inclusion of persons other than the named insured within the protection afforded, a broad and liberal view is taken of the coverage extended. But, if the clause in question is one of exclusion or exception, designed to limit the protection, a strict interpretation is applied." It is for that reason that the interpretation of "household" with reference to one type of policy is of little assistance in dealing with another type. *Compare*, for example, the annotation in 1 *A.L.R. 2d* 561, (1948) and the cases therein collected, *with* the annotations and cases therein collected in 78 *A.L.R. 2d* 1404 (1961) and 173 *A.L.R.* 901 (1948).

Following the same reasoning as expressed in the *Crossfield* case is the decision in the second Washington case to address the problem, *American Universal Ins. Co. v. Thompson*, 62 Wn.2d 595, 384 P.2d 367 (1963). In interpreting the phrase of a California insuring agreement which included a "resident of the same household" within coverage, the court noted that under California law in policies where the phrase is one intended to extend coverage, the terms are broadly interpreted, while phrases that are intended to exclude coverage will be given a restricted interpretation. It was held that this construction of the phrase is appropriate' because in both exclusion and inclusion situations, the courts prefer an interpretation in favor of coverage. The opinion in the *American Universal Ins. Co. case*,

commenting on *Cal-Farm Ins. Co. v. Boisseranc*, 151 Cal. App. 2d 775, 312 P.2d 401 (1957), noted that the phrase "resident of the same household" has no absolute or precise meaning; and, if doubt exists as to the extent or fact of coverage, the language used in an insurance policy will be understood in the sense that will provide coverage.

The cases from other jurisdictions do not speak with unanimous accord, but the predominant note sounded favors coverage. *Neidhoefer v. Automobile Ins. Co.*, 182 F.2d 269, 273 (7th Cir. 1950), was an action on an insurance policy brought to recover for loss of personal property stolen from the insured's former wife. The suit brought by the insured husband against the insurer was defended on the basis that the policy did not provide coverage for the former wife who, it was claimed, was not among the "members of the Assured's family of the same household . . ." The trial court's vacation of the jury verdict finding coverage was upheld on appeal. The opinion stated:

the important and perhaps controlling feature . . . is the intent possessed by the departing member of a family. Of course, it is not difficult to visualize a situation where a wife might leave the home for a considerable time and still retain her status as a member of the family and the household, for instance, if she was away on a visit or for some other purpose. In such a situation the separation would be not only with the consent of the husband but with the intent on the part of the wife to return. In the instant case, however, we see no reason to think or infer that Mrs. Neidhoefer, when she separated from her husband and home on September 12, 1946, had any intention other than making such separation permanent. And the status which she then assumed was firmly established and confirmed by her suit for separate maintenance and again by her suit which culminated in a divorce.

*Firemen's Ins. Co. v. Burch*, 426 S.W.2d 306 (Tex. Civ. App. 1968), also examined the intent of the parties and found no coverage. Mr. and Mrs. Buttler had purchased a policy of insurance during their marriage and then separated. The wife testified that she never intended to return after the

separation. She filed for divorce in November 1965; and while driving her father's pickup in December, collided with an automobile. A declaratory judgment suit was brought by the injured party seeking to determine whether the policy issued to Mr. Buttler provided coverage. The policy provision defined the named insured as including his spouse "if a resident of the same household." The court held that since the spouse never intended to return to the household from the time of separation that she was not a resident therein. The decision concluded that under the policy and Texas law, which holds a husband legally obligated to pay damages occasioned by a wife's tort, the insurance company was required to defend the husband and pay any judgment which might be rendered against him but was not required to defend the separated wife or to pay any judgment which might be rendered against her.[2]

These cases, while holding for the insurer, base their result upon whether the intention of the departing spouse was to depart permanently or to leave only on a temporary

---

[2]*Schehen v. North-West Ins. Co.*, 258 Ore. 559, 484 P.2d 836 (1971), said that although the term "household" may be somewhat elastic, the definitions given the term require that the members of the "household" dwell or live together. The colorful case of *Marlowe v. Reliance Ins. Co.*, 15 N.C. App. 456, 190 S.E.2d 417 (1972), involved the Weavers who married in 1963 and separated in 1968. The wife owned a 1957 Chevrolet with the title in her name. It was this vehicle which the defendant insurance company had insured. An insured was defined as "named Insured and, if the named Insured is an individual, his spouse if a resident of the same household . . ." Two months after the parties had separated, the husband came to the trailer where the wife was living, took the car's keys against her vociferous vocal remonstratives and collided with the plaintiffs. The trial court found that though the Weavers were married they had been living separate and apart, and the burden of proving coverage was on the plaintiffs. It was held that since the proof was that the husband dwelt in a separate abode, coverage did not exist under the policy, and the plaintiffs had to look for recovery from the erstwhile husband rather than the insurer. We find this to be the minority approach in marital separation cases where under the terms of the policy the spouse is included in coverage while "a resident of the same household."

or trial basis. The results of both previously discussed decisions follow from the evidence that the fixed intent of the departing spouse was never to return.

The result reached by the majority of jurisdictions is represented by *Lumbermens Mut. Cas. Co. v. Continental Cas. Co.*, 387 P.2d 104 (Alas. 1963), wherein the wife resided in the family home while the husband ate and slept elsewhere and was attempting reconciliation after the institution of divorce action. The wife was killed while driving a rented automobile. Injured passengers in the backseat of the car brought suit against the administrator of the decedent wife's estate, who demanded that the insurance company defend the action claiming that the policy issued to the husband provided coverage for the accident. The opinion stated in part on page 106:

> Lumbermens argues that the phrase "resident of the same household" should be interpreted as including only persons living "under the same roof" with the named insured. The insurer's theory apparently being that where the named insured, his spouse and relatives all live in the same house, all would have normal opportunity to use the same automobile rather than resort to the use of non-owned automobiles. The argument infers that the likelihood that a spouse and relatives would more frequently use non-owned automobiles when not living in the same house with the named insured is an increased risk not intended to be covered by the policy provisions under consideration.

> No general rule for the interpretation and application of the policy clause under consideration occurs to us. The facts of the particular case must be examined in order to determine when the named insured, or his spouse or relatives are or cease to be residents of the same household. If either of them was eating and sleeping away from the family residence for a temporary period of time with the intention of returning, it could not ordinarily be said that their usual residence had been abandoned in favor of the temporary arrangement. Temporary absences frequently occur in the normal household because of family emergencies, business requirements, vacations and for a variety of other reasons. It would seem that the policy provision under consideration was specifically designed to

cover such situations and provide protection while the absent person happened to be operating a non-owned automobile. If the provision were given the restricted interpretation urged by Lumbermens, protection would not extend to any situation where the spouse or relative was temporarily not eating and sleeping in the same house as the named insured. Such an interpretation of the meaning of the clause would be narrower than that intended by the policy in our opinion.

Relying upon *Lumbermens Mut. Cas. Co. v. Continental Cas. Co., American Cas. Co. v. Harleysville Ins.*, 238 Md. 322, 208 A.2d 597 (1965), held that a wife who was separated from her husband at the time she was involved in a collision was covered by the husband's policy as a resident of the same household where she had been staying away at night only. The court said that though marital difficulties existed, it could not be assumed that the separation was irreconcilable and the difficulties could not be resolved.

A declaratory judgment action on an automobile liability policy was brought in *Aetna Cas. & Sur. Co. v. Miller*, 276 F. Supp. 341 (D. Kan. 1967). The wife of the named insured was separated from the named insured at the time of the accident and the policy provided coverage for the spouse "if a resident of the same household." The opinion held that since the evidence showed that the separation was on a tentative rather than a permanent basis that coverage was provided. The opinion found support from *Lumbermens Mut. Cas. Co. v. Continental Cas. Co.* stating on page 346:

> The best case in this regard is the case of Lumbermens Mutual Casualty Co. v. Continental Casualty Co., 387 P.2d 104 (Alaska, 1963), involving the identical language of the policy under interpretation in the case at bar. . . . It was held that the ruling of the trial court was correct—that the husband and wife were residents of the same household at the time she met her death while operating a non-owned automobile within the provisions of the Lumbermens policy.

The opinion notes the indefiniteness of the pertinent policy provisions observing on page 347:

"The terms 'residence' and 'household' of an insured as used in a comprehensive policy protecting insured and his wife and relatives if residents of his household, *had no absolute meaning, but their meaning might vary according to the circumstances.*" (Emphasis supplied.)

The decision continues:

The Court is further persuaded by the fact that the couple visited together, he saying the relationship was apart, and she saying it was together. Another persuasive factor, not strictly a provision of the insurance policy under interpretation, but certainly a straw in the wind, of no doubt some compelling influence in selling the policy originally, was the very comfortable title: "Custom-Rite (Family Automobile Policy)," printed in bold face type on the front of the policy, the inference being that this was a policy to protect all members of the family as long as such family relationship legally existed. It should also be noted that the policy in the case at bar had been in effect during the marriage of the parties—not taken out *after* the separation and divorce proceedings.[3]

Finally, *Aetna Cas. & Sur. Co. v. Miller* concludes with the following statements on page 347:

The opinion of the Court as to the ambiguity of the policy and specific facts found from the evidence, which call for an interpretation in favor of coverage, is bolstered by some general public policy considerations which should not be shunted aside in examining a legal problem of this character.

It is well-known law in Kansas, as well as the nation as a whole, that insurance is such an essential part of the commercial activities of our people as presently conducted, that it has long ago become a business impressed with the public interest. . . .

. . . .

This Court does not believe that an insurance company, doing business as a quasi-public institution, can or should be able to avoid liability under ambiguous provisions of a policy—by attempting to require the spouse of

---

[3] We note that an endorsement to the instant policy was entitled "Family Protection Against Uninsured Motorists."

the policy owner as an "insured" to remain under the same roof and in the same physical household during the legal existence of a marriage. Neither does this Court believe it is incumbent upon a user of the highways to conduct a "bed check" to see if another motorist is fully and safely insured by the fact that conjugal bliss is present in his home at the time.

*Holloway v. Farmers Ins. Exch.*, 252 Ark. 899-C, 481 S.W.2d 328 (1972), involved Mr. and Mrs. Holloway who had been married, divorced and remarried and were living in Wichita, Kansas. Mrs. Holloway left on a trip with friends and while in Arizona was injured in an accident. Mr. Holloway was insured under a policy which included the spouse if a resident of the same household. Ten days after Mrs. Holloway left Kansas for Arizona, Mr. Holloway signed a divorce complaint. The accident occurred shortly thereafter. The testimony at the trial of the action against the insurer indicated that the purpose of the separation was to give the husband and wife time to evaluate their relationship. Following the accident, Mr. Holloway visited his wife frequently, and it was not until nearly a month after the accident and 2 months after Mr. Holloway had commenced the divorce action that she learned of it. The court held that the circumstances indicated that the household continued and that the wife remained a resident of the household at the time of the accident stating on page 899-G:

Appellees, to support the Chancellor's declaratory judgment decree, rely upon *Couch on Insurance*, 2d § 42:78 and the case of *Neidhoefer v. Automobile Ins. Co. of Hartford, Conn.* (7th Cir. 1950), 182 F.2d 269. Both authorities equate "residing in the same household" and similar policy provisions as referring to domicile. See also *Central Manufacturers' Mutual Ins. Co. v. Friedman*, 213 Ark. 9, 209 S.W.2d 102 (1948). Both *Couch* and the *Neidhoefer* case recognize that the controlling issue in determining coverage under such policy provisions is the intent possessed by the departing member of the family. In other words, the departing spouse remains a resident of the household unless the intent of the departing mem-

ber be that the household be disrupted or his domicile therein be terminated.

. . .

When the record is reviewed from this standpoint together with her testimony and that of her husband that she departed on the trip to Phoenix only for the purpose of getting away for awhile, we find the Chancellor's holding that she was not a resident of the household at the time of the accident is contrary to both the law and the evidence.

*See also Varnadoe v. State Farm Mut. Auto. Ins. Co.,* 112 Ga. App. 366, 145 S.E.2d 104 (1965); *Stone v. Waters,* 483 S.W.2d 639 (Mo. App. 1972).

■■ From the cases which have dealt specifically with coverage during the period that one spouse has separated from the other, the basic inquiry is whether the separation was intended to be permanent without the prospect of reunion or temporary with reconciliation a possibility. Coverage continues where a spouse leaves in hope that a reconciliation may take place; but where the fixed intent is to depart permanently and reconciliation is not contemplated, coverage ceases. The Washington cases have consistently interpreted insurance clauses in favor of the insured and against the insurer when interpretation was called for. *Dairyland Ins. Co. v. Ward,* 83 Wn.2d 353, 517 P.2d 966 (1974); *Myers v. Kitsap Physicians Serv.,* 78 Wn.2d 286, 474 P.2d 109 (1970). An inclusionary clause is to be liberally construed to provide coverage for those who can be embraced within its terms. *See Dickson v. United States Fidelity & Guar. Co.,* 77 Wn.2d 785, 466 P.2d 515 (1970); *American Universal Ins. Co. v. Thompson,* 62 Wn.2d 595, 384 P.2d 367 (1963); *Dennis v. Great American Ins. Cos.,* 8 Wn. App. 71, 503 P.2d 1114 (1972); *Murray v. Western Pac. Ins. Co.,* 2 Wn. App. 985, 472 P.2d 611 (1970).

The decisions discussed have relied upon a number of factors to ascertain the intent of the separating spouse. Noted as having a bearing upon the question has been the living arrangements of the parties, their attitudes towards one another as evidenced by their words and actions,

whether they continued to see each other, and the continuation or cessation of financial obligations. Also persuasive to the decisions has been the public policy in favor of continuing coverage to both spouses during the legal existence of the marriage. The findings of the trial court, though stating that there was no definite time set for Maria Smith's return to Michael, reveal that reconciliation was intended as a possibility. When this is considered in light of the oral decision's amplification of their lack of intent to divorce at that time and the finding of their ultimate reconciliation following the accident, the indication of the findings is that their intention when they separated was to do so on a trial basis and not permanently. The absent spouse remained a resident of the same household as the named insured under the circumstances.

The judgment is reversed, and the trial court instructed to enter judgment on behalf of the appellant Hawaiian Insurance.

WILLIAMS, C.J., and SWANSON, J., concur.