**Robert N. WAINSCOTT, Individually and as Personal Representative for the Estate of Deborah K. Wainscott, Appellant,**

v.

**Charles J. OSSENKOP and State Farm Fire and Casualty Company, Appellees.**

**No. 4476.**

Supreme Court of Alaska.

Sept. 11, 1981.

Charles Hagans, Sanford M. Gibbs, and Richard L. Waller, Hagans, Smith, Brown, Erwin & Gibbs, Anchorage, for appellant.

Roger F. Holmes and Paul Waggoner, Biss & Holmes, Anchorage, for appellees.

Before RABINOWITZ, C. J., CONNOR and BURKE, JJ., and DIMOND, Senior Justice.*

* Dimond, Senior Justice, sitting by assignment made pursuant to article IV, section 16 of the Alaska Constitution.

## OPINION

RABINOWITZ, Chief Justice.

This is an appeal from the entry of summary judgment against, and denial of a summary judgment in favor of, Robert N. Wainscott, individually and as personal representative of the estate of Deborah K. Wainscott, appellant's daughter.[1] The main issue presented is whether Deborah came within the definition of an "additional insured" under Wainscott's policy with State Farm Fire and Casualty Company ("State Farm"), the appellee. We hold that summary judgment should have been granted to Wainscott rather than State Farm, and accordingly reverse.

Some facts are not in dispute. The policy was issued on December 2, 1975. At that point, Robert, his wife Juanita, and their daughter Deborah[2] were all living together in the family home at 6410 Ridgeview Circle in Anchorage; but in the latter part of March 1976, Robert Wainscott moved out of the house, and in April Juanita filed for divorce. They were still living separately when, on June 5, 1976, Deborah Wainscott was fatally injured in an automobile accident.

Juanita intended her separation from Robert to be permanent, and indicated that when her husband had moved out he had left behind only a few stuffed animal heads. Robert stated that he had moved into an apartment into which he had moved "some" of his belongings, and it was his belief that

a reconciliation was still conceivable. It is clear that, since he had the use of a company car, he did leave the three family cars with his wife and children, and continued to pay the premiums on the insurance policies. Additionally, he continued to own the house at 6410 Ridgeview Circle and to pay the heat, electricity, and telephone bills for the house as of the time of the accident. The divorce did not become final until December of 1976.

State Farm concedes that the driver of the vehicle in which Deborah was riding was negligent, that the vehicle was uninsured and that, if Deborah was a resident of her father's household at the time of the accident, she was covered under the uninsured motorist provisions of her father's policy. That policy expressly provides coverage for:

(1) the first *person* named in the declarations and while *residents* of his household, his spouse and the *relatives* of either . . . . [emphasis in original]

The principal question now before us is, therefore, whether Deborah Wainscott was, at the time of her fatal accident, a resident of her father's household within the meaning of Robert Wainscott's insurance policy. State Farm claims that she was not because at the time of the accident, Robert and Juanita Wainscott were separated and Robert was living away from the family home.

Appellant's arguments are essentially three: that the term "his household," as

1. The proceeding below was preceded by an action for declaratory relief instituted by State Farm in the United States District Court for the District of Alaska. In that action State Farm sought to absolve itself of liability under the Wainscott policy. While the federal action was pending, appellant filed the present action in the superior court seeking declaratory relief as well as compensatory and punitive damages. The superior court granted State Farm's motion for a stay pending the outcome of the federal action, but we reversed and remanded the case. The federal action resulted in a published opinion, *State Farm Mut. Ins. Co. v. Wainscott*, 439 F.Supp. 840 (D.Alaska 1977). The parties have not raised any arguments concerning the possible collateral estoppel effect of issues determined in that action, and we need not address that question. The federal court apparently concluded that the term "his house-

hold" was ambiguous and that an issue of fact precluding summary judgment was presented, a conclusion with which we agree. Its further holding addressed the parties' arguments under AS 09.15.010 and AS 09.55.580, which we find we need not reach in light of our resolution of the "reasonable expectations" issue discussed *infra*. The federal court also dismissed Wainscott's claim for bad faith. We need not reach this in that we agree with State Farm's argument that the issue was not properly preserved on appeal from the superior court's judgment.

2. The Wainscotts also have two other children: Robert, who apparently had an apartment of his own at the time of the accident, and Rebecca, who subsequently resided with her father after Juanita moved to New York.

used in the definitional language of the policy, is ambiguous and, under established principles of insurance law, should be construed against the insurer;[3] that, even in the absence of ambiguity, coverage should be found here under the rule of construction that the court must construe the contract to provide the coverage a lay person would reasonably expect, given a lay interpretation of the policy language;[4] and that, even if the trial court did not err in its treatment of these two principles, it did err in focusing on the intent to separate as between Robert and his wife Juanita, rather than on the intent to separate as between Robert and his daughter Deborah. Proper resolution of these issues, Wainscott contends, entitles him to summary judgment, or at least demonstrates that there were factual issues which precluded the superior court from entering summary judgment for State Farm.

A.   Intent of departing family member.

The superior court cited the case of *Lumbermens Mutual Casualty Co. v. Continental Casualty Co.*, 387 P.2d 104 (Alaska 1963), in which we faced a situation parallel to the one presented here.   There, the husband (the insured) moved out of the family house in late July of 1960; the wife filed suit for divorce on August 9; the policy was issued on August 19, with the insured listing the family home as his place of residence; and the wife was killed in an automobile accident in October of the same year.   We

emphasized that no general rule can be formulated and that the facts of each case must be examined to determine whether the named insured, his spouse, and his relatives have ceased to be residents of the same household.   *Id.* at 106.   We noted that "[i]f either [spouse] was eating and sleeping away from the family residence for a temporary period of time with the intention of returning, it could not ordinarily be said that their usual residence had been abandoned," and that under such circumstances, both spouses should still be regarded as residents of the same household.   *Id.*  After examining a variety of facts, we concluded that the insurer had failed to demonstrate an intent not to return on the part of the departing spouse.[5]

Applying the criteria set out in *Lumbermens*, the superior court found that "there was no genuine issue of fact regarding the finality of the separation between [Wainscott] and his wife" and that "6410 Ridgeview Circle was not the household of the plaintiff under the terms of the insurance policies."[6]

The issue is not, however, the intention of Robert and Juanita as to whether they planned to reconcile or remain apart; rather, the focus must be on the relationship between Robert and his daughter Deborah.   If that separation was intended to be only temporary, then they would still be considered as being in the same household.[7] A permanent separation between husband and wife does not necessarily remove a

---

3.   *United States Fire Ins. Co. v. Schnabel*, 504 P.2d 847, 851 n.13 (Alaska 1972).

4.   *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 65–66 (Alaska 1977).

5.   [The insured, George Jelich,] had signed an appearance and waiver in the divorce action. [His wife, Juanita,] and the children continued to reside in the family home.   George visited at the family home several times a week and spent Sundays there.   He was paying the house and utility payments, buying all groceries used by the family, kept his tools and equipment in the home, and occasionally took Juanita and the children out for meals. It was George's wish to effect a reconciliation with his wife.   The matter had been discussed between them but no decision had been reached.   George received most of his

mail at the family home and the balance at his office.   The automobile covered by Lumbermens policy had been used by both George and Juanita during their separation and up to the time of Juanita's death.
*Lumbermens Mut. Cas. Co. v. Continental Cas. Co.*, 387 P.2d 104, 106 (Alaska 1963).

6.   The principal evidence that no reconciliation was expected was Juanita Wainscott's deposition, and she was clearly referring to the separation between herself and Robert.   Robert's deposition, on the other hand, indicated that the two were discussing reconciliation.

7.   Probably the foremost determinant would be Robert's own intent; he was the departing party and the named insured, and, as Deborah's father, he would have had some input as to eventual custody arrangements.   *See Southern*

child from the household of either; this is shown most graphically in cases indicating that a child of divorced parents may, depending on the facts, be regarded as being in the household of both. *See, e. g., Miller v. United States Fidelity & Guaranty Co.,* 127 N.J.Super. 37, 316 A.2d 51, 54–55 (1974).

The fact that the superior court's finding of permanent separation was concerned with the inter-spousal relationship, rather than the parent-child relationship, requires reversal of the superior court's grant of summary judgment in favor of State Farm. Additionally, we believe it would be inappropriate to further rule that Wainscott should have been awarded summary judgment on this ground. Although there was evidence in the record to support a finding that Robert Wainscott intended his separation from Deborah to be only temporary,[8] there is also evidence in the record to the contrary.[9] We are therefore convinced that there is a genuine issue of fact presented, and that summary judgment is appropriate for neither side on this ground.

B. Ambiguity of "his household."

Wainscott contends that the term "while residents of his household" in the policy is ambiguous, in that it could have at least two meanings: the one urged by State Farm, which would require that the insured be a resident of the household; and an alternative meaning proffered by Wainscott, under which "his household" could mean "a house and appurtenances thereto owned by a person in which his family resides where that person furnishes the necessary support for the family." Under the latter interpretation, "his household" does not suggest co-residency, but rather ownership [10] of the premises and support of those residing there.

Certainly the word "his" can encompass purely possessory rights (e. g., "his land" denotes ownership) as well as membership (e. g., "his team" would denote membership on the team). "His household" occupies a hazy area which could denote either concept.

State Farm presents several points which it claims narrow this meaning. First, the case law has not distinguished "his household" from "same household," which Wainscott concedes would connote residency.[11] It is true that courts have not distinguished the two terms, and have cited cases

*Farm Bur. Cas. Ins. Co. v. Kimball,* 552 S.W.2d 207, 208 (Tex.App.1979) (intention of absent party of interest is main factor to be considered). Deborah's intentions would have to be given secondary weight, as it is unclear what impact her own desires would have had. Juanita's intent, as she was not a direct party to the pertinent father-daughter relationship, would impact on this matter tangentially; but only her intentions as to Deborah's custody arrangements, not her intentions as to the permanence of her separation from Robert, would be relevant.

8. He continued to support his children during the period of separation from his wife; he saw Deborah at least once between his departure in late March and the accident in early June; he did not surrender custody of the children in the divorce action (apparently no provision for custody was made, since the remaining children were over 18); and, most significantly, the older daughter, Rebecca, moved in with him after the divorce. Juanita had taken a smaller apartment, and subsequently moved to New York.

9. There is mention in the superior court's opinion of Robert's having made a statement to the effect that he "washed his hands" of Deborah following an incident in which he drove Deborah and Juanita to the home of some people who apparently had accused Deborah of taking some money from them while babysitting. This evidence apparently derived from an unsworn statement made by Juanita to State Farm's insurance adjuster. The details in Juanita's actual deposition are very sketchy.

10. State Farm criticizes Wainscott's emphasis on "ownership" on the basis that Wainscott fails to specify what position a renter would be in under this policy. Although we need not address the issue, we think Wainscott's arguments can be broadened to include other legal rights to possession besides ownership.

11. *See, e. g., Cal-Farm Ins. Co. v. Boisseranc,* 151 Cal.App.2d 775, 312 P.2d 401, 405–06 (1957); *State Farm Mut. Auto. Ins. Co. v. Elkins,* 52 Cal.App.3d 534, 125 Cal.Rptr. 139, 142–43 (1975).
We are using "his household" and "same household" as shorthand; the actual controver-

using one term to assist in the interpretation of insurance policies containing the other. However, accepting this argument would hold Wainscott to too high a burden. Wainscott does not dispute the proposition that the two terms can be interchangeable; he argues only that the phrase "his household" is capable of at least two meanings, one of which could be interchangeable with "same household as the insured," and the other of which denotes ownership or possessory rights. Thus, Wainscott's position is not inconsistent with the case law, as no case brought to our attention has held that "his household" must have exactly the same meaning as "same household."

■ State Farm next argues, correctly, that the term must be interpreted in conjunction with the other terms and definitions contained in the policy. It points to two definitions contained in the policy to support its position, that of "resident" and that of "relative."

The definition of "resident" is:

Resident or Reside—when used with reference to the named insured's household, means bodily presence in such household and intention to continue to dwell therein.

This definition sheds no light on the problem. The term "such household" clearly refers back to "named insured's household," which presents the same problem as "his household"; it could denote either possessory rights and support of, or residence in, the household.[12]

■ The definition of "relative" is more problematic:

Relative—means a relative of the named insured or of his spouse, who is a *resident* of the same household, provided neither such *relative* nor his spouse owns a *private passenger automobile*. [emphasis in original]

sy is over whether "residents of his household" has to have the same meaning as "residents of the same household as the insured."

**12.** That is, in order to be covered under the policy, Deborah had to be a resident of the insured's household, with the intention of re-

State Farm argues that for Deborah Wainscott to be a "relative" under this definition, she had to have been a resident of the "same household" as Robert Wainscott. It claims that since Wainscott concedes that "same household" would clearly imply co-residence, his argument in support of the ownership and support interpretation breaks down. However, we find the policy's definition of "relative" ambiguous for we cannot tell from the text whether it is the "relative" or the "spouse" who is required to be a "resident of the same household," and this makes a dispositive difference here. If the "relative" is required to be a resident of the same household, then State Farm is correct. If, however, the "spouse" is required to be a resident of the same household, then a different construction follows. In the latter case, the term "relative" would include any relative of the named insured, and, as long as the insured and his spouse are residents of the same household, any relative of the spouse. This might seem to extend the coverage of the policy too broadly, but for the additional residency requirement imposed in the definition of "insured"—i. e., that this group of "relatives" are only insured while they are residents of *his household*.

Since "spouse" is a closer antecedent than "relative"; since the latter interpretation better explains the otherwise duplicative presence of a residency requirement in the two definitions (i. e., that of "relative" and that of "insured"); and since ambiguities, such as the one found here, are to be resolved in favor of the insured, we must adopt the latter interpretation. Given that interpretation, the definition of "relative" avails State Farm nothing. Deborah clearly was a relative of the named insured, Robert Wainscott; and since this special residency requirement may only affect relatives of the spouse (i. e., if the spouse is not a resident of the same household, then the

maining in the insured's household. As the question we are trying to resolve is the proper interpretation of the term "his household" (the equivalent of "the insured's household"), this analysis merely takes us in a circle.

spouse's relatives are not included in this definition), Deborah was within this definition of "relative" and the question again comes back to whether Deborah was in the insured's (i. e., Wainscott's) household.

■ Here again, we find ourselves unable to adopt Wainscott's position completely. We do not think that coverage should be found in every case involving "a house and appurtenances thereto owned by a person in which his family resides where that person furnishes the necessary support for the family." For example, in *Schehen v. NorthWest Insurance Co.*, 258 Or. 559, 484 P.2d 836 (1971), this definition was met, but the court denied coverage. There, the insured originally resided with his wife, adult daughter and two grandchildren in a duplex he owned in Eugene. In 1964, he and his wife moved to Klamath Falls, where they bought a house, but the daughter remained in the duplex in Eugene with her two children. The insured continued to provide the financial support for his daughter, maintained contacts in Eugene (he belonged to clubs in Eugene, continued to receive mail there, etc.), and in fact moved back there in 1968. The question in that case was whether the daughter had been a resident of the insured's household at the time of an accident in 1967. The court rejected the argument that the daughter was in the insured's household, in spite of the fact that the insured owned the premises in Eugene and provided the support for his daughter there. This holding was, we think, correct, in light of the facts of that case: the daughter was a full-grown woman with children of her own, and the father and daughter lived in different cities for a period of about four years. The Oregon court was of the view that the claim of a common household would "stretch credulity." *Id.* 484 P.2d at 838.

■ On the other hand, we think that ownership of the premises and support can

be relevant considerations. In *Butler v. MFA Mutual Insurance Co.*, 356 So.2d 1129, 1132 (La.App.), *cert. denied*, 358 So.2d 641 (La.1978), the court found a household relationship between the insured and his daughter despite the fact that the insured and his wife were divorced and custody of the daughter had been granted to the wife. This ruling was based partially on findings that:

> [The insured] exercised such dominion and control over the property to justify a finding that it continued to be his legal residence even though he spent most nights in a rented room at another address. He was the owner of the property, filed a homestead exemption from taxes on it, provided all upkeep and maintenance.[13]

*Id.*

Thus, we conclude that the superior court's grant of summary judgment to State Farm on this ground was erroneous, as the term "his household" is sufficiently ambiguous to encompass the situation presented here, should the factual issues, once resolved, place this case closer to *Butler* than to *Schehen*. However, the superior court's denial of summary judgment to Wainscott cannot be reversed on this ground for we do not think that ownership of the premises and support of the family, alone, require a finding that 6410 Ridgeview Circle was Wainscott's household. Since resolution of this particular question involves findings of fact which are contested by the parties, summary judgment for either is inappropriate.

However, despite the fact that a remand would be necessary to resolve the first two issues discussed here, we conclude that Wainscott's third argument entitles him to summary judgment.

### C. "Reasonable expectations."

We agree with Wainscott that Deborah should be found to have been an additional

---

**13.** *Butler* did not rely on the dominion and control of the premises as the sole ground of decision: it also emphasized the amount of time the father spent with the daughter there. Also, the case does not support the proposition that considerations of ownership are more relevant when the language of the policy uses "his" rather than "same," as the *Butler* court was interpreting a policy using "same household" language.

insured under the rule of construction that the policy must be construed "so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy's terms." *Continental Insurance Co. v. Bussel*, 498 P.2d 706, 710 (Alaska 1972). This principle is not unrelated to the "ambiguity" rule noted above, but it is a broader principle, distilled from "opinions that strain the outer limits of the theory of resolving ambiguity" and from "a variety of other doctrines . . . involving such things as delivery of a policy that deviates in some marked fashion from the coverage applied for, and delivery of a renewal policy of lesser scope than the previous policy without calling the insured's attention to the reduction of coverage." [14]

We think it would be entirely reasonable for Wainscott to expect, during the interim period before the bonds of marriage had been officially dissolved and before any provisions had been made for the care and custody of the minor children of the marriage, that his policy would continue to include within its coverage those who lived within the household for which he continued to be the sole source of support, even though he had recently, and perhaps permanently, discontinued his actual physical presence at 6410 Ridgeview Circle. We agree with the Wisconsin Supreme Court, which has stated:

> [A spouse,] voluntarily moving or ordered to remove himself from the family home by a temporary order of the family court, would hardly expect that his removal from the family premises pending trial would leave his wife and children without insurance protection.

*Belling v. Harn*, 65 Wis.2d 108, 221 N.W.2d 888, 892 (Wis.1974).[15] As State Farm points out, there may be situations in which the parties to a marriage separate permanently without undergoing official divorce proceedings. In such cases, gearing the insured's reasonable expectations to an official court decree would be inappropriate; where the parties have manifested an intent to separate permanently without undergoing official divorce proceedings, "reasonable expectations" must be measured by other means. We are not faced with that situation here, however, and we need not delineate what factors would enter into such a determination.[16]

State Farm also argues that Wainscott's "reasonable expectations" argument is based on the assumption that Juanita and Deborah Wainscott would, under State Farm's interpretation, have been deprived of all coverage, whereas State Farm's position is that the policy only deprived them of coverage when they were not occupying an "owned motor vehicle." We think this is beside the point. The question is whether Wainscott should reasonably have expected any decrease in the scope of coverage as a result of his separation from his wife.

State Farm also asserts that our ruling here is inconsistent with, and requires us to overrule, *Lumbermens Mutual Casualty Co. v. Continental Casualty Co.*, 387 P.2d 104 (Alaska 1963). However, State Farm has not pointed to any specific aspect of the opinion that must be overruled, and we fail to perceive any. Certainly the holding in *Lumbermens* (that the trial judge was correct in ruling that George and Juanita Aelich were residents of the same household at the time of her death) is not inconsistent

14. R. Keeton, Insurance Law § 6.3(a), at 353, 356 (1971) (footnotes omitted).

15. *Cf. Bierbusse v. Farmers Ins. Group*, 84 Mich.App. 84, 269 N.W.2d 297 (1978) (where no-fault statute appears to restrict personal injury protection to those of the named insured's relatives "domiciled in the same household," a child whose parents are separated with a divorce pending is covered by the no-fault policy until the divorce is finalized even though the spouse and child are domiciled in a separate household from that of the named insured).

16. Nor do we intend to intimate that a divorce and custody determination will be conclusive as to coverage. There are several cases which have held a child to be a resident of the household of one divorced parent for coverage purposes even though custody had been awarded to the other parent. *See e. g., Butler v. MFA Mut. Ins. Co.*, 356 So.2d 1129 (La.App.), cert. denied, 358 So.2d 641 (La.1978); *Miller v. United States Fidelity & Guar. Co.*, 127 N.J.Super. 37, 316 A.2d 51 (1974).

with our holding in the present case. We note that the "reasonable expectations" argument was not presented in *Lumbermens*, and that as a result that case necessarily relied upon an analysis different from the one we have applied here.

The judgment of the superior court is reversed and remanded with instructions to enter summary judgment in favor of Wainscott.[17]

MATTHEWS, J., not participating.

CONNOR, Justice, dissenting.

I must respectfully dissent.

The term "his household," when used in automobile liability insurance policies has often been construed by the courts. In general, the courts have drawn a distinction between temporary absences from the family home and permanent removal from that home. We recognized that distinction in *Lumbermen's Mutual casualty Co. v. Continental Casualty Co.*, 387 P.2d 104 (Alaska 1963), although on the facts of that case we held in favor of insurance coverage.

In the case at bar it must be determined whether there was any genuine issue as to the permanency of Robert Wainscott's absence from the erstwhile family home. In my view, the facts here strongly support the superior court's conclusion that Robert Wainscott did intend his removal from the home to be permanent.[1]

It is undisputed that the Wainscotts separated in March, 1976, and that they never again lived under the same roof.[2] When Robert moved out he took virtually all of his possessions and, except for the week of Deborah's funeral, did not return to the family home even for a visit. Apparently, no attempt at reconciliation was ever made. Finally, Juanita stated that it was her understanding that Robert intended the separation to be permanent.[3] Significantly, Robert did not attempt to contradict this statement. The only fact offered on the other side of the scale which might indicate that Robert did not intend his departure to be permanent is that Robert continued to provide financial support for his wife and children during the period of separation. I believe that the trial judge properly discounted this factor in arriving at his conclusion. Such facts tend to show only that Robert Wainscott recognized his continuing obligation to support his family, not necessarily that he intended to continue the marriage.

Because I can find no evidence that Robert Wainscott intended his separation from his wife to be other than final, I conclude that summary judgment in favor of State Farm was proper.

Appellant attempts to distinguish *Lumbermen's* on the ground that "his household" does not have the same meaning as "same household," the phrase interpreted in *Lumbermen's*. According to appellant, "his household" imports ownership.[4] My review

17. Our resolution of the issues discussed above renders it unnecessary to address any of the other arguments advanced by the parties.

1. For the purposes of summary judgment, the only sworn testimony before the superior court was the deposition of Juanita Wainscott and the affidavit of Robert Wainscott. Although appellant refers in this brief to an unsworn statement given by Robert Wainscott to State Farm investigators, we should not consider that statement on appeal. We have previously held that "assertions of fact in unverified pleadings and memoranda" should not be reliedon in ruling on a motion for summary judgment. *Libby v. City of Dillingham*, 612 P.2d 33 (Alaska 1980); *Jennings v. State*, 566 P.2d 1304, 1309–10 (Alaska 1977).

2. Juanita filed for divorce in late April. At the time of the accident no divorce decree had been entered; nor had any determination been made as to the custody of Deborah. A final decree of divorce was entered in December, 1976.

3. In determining whether household ties have been severed, we should look only to the intent of the departing spouse. Juanita's intent is therefore irrelevant. However, Juanita's understanding of the situation, especially when not contradicted by Robert, is at least circumstantial evidence of Robert's intent.

4. Appellant would define "his household" as: "A house and appurtenances thereto owned by a person in which his family resides where that person provides the necessary support for the family."

of the cases, however, leaves me unconvinced.

First, other courts appear to treat these phrases interchangeably, not out of carelessness but from a conviction that they convey roughly the same meaning in the context in which they are used.[5] What the cases indicate—and they are legion—is that the courts have placed no particular emphasis on the qualifying words "his" and "same." Instead, courts tend to regard "same household" as meaning "the insured's household."[6] In *National Farmer's Union Property & Casualty Co. v. Maca*, 26 Wis.2d 399, 132 N.W.2d 517 (1965), for example, the court construed the phrases "resident of the household of the named insured" and "member of the family" and commented upon the use of such phrases, as well as similar phrases, in automobile liability insurance policies:

> "Although the purposes differ, these phrases are used in all cases to describe a common type of close relationship, varying greatly in detail, where people live together as a family in a closely knit group usually because of close relationship by blood, marriage or adoption and deal with each other informally, and not at arm's length."

*Id.* 132 N.W.2d at 520–21.[7]

Second, I find persuasive the case of *Schehen v. North-West Ins. Co.*, 258 Or. 559, 484 P.2d 836 (1971). There the insurance policy extended coverage to the named insured or a "resident relative member of his household." The facts showed that the insured was a dentist who resided in Eugene where he maintained a duplex with his wife, adult daughter and two grandchildren. In 1964 he moved his practice to Klamath Falls where he bought a house and established residence with his wife, the daughter remaining in Eugene with her two children. The insured continued to provide the financial support for his daughter and visited her once every four to six weeks. In addition, he maintained club memberships in Eugene, continued to receive some mail there and testified that he always considered Eugene his home and intended to return to live in the duplex with his daughter and grandchildren. He in fact did return in 1968. In 1967 the daughter was injured while operating one of the insured vehicles and sought to recover under her father's policy as a "resident relative member of his household."

The court acknowledged that it was theoretically possible to maintain two households but nevertheless denied coverage because the insured had not shown that he had divided his time evenly between the two households on a "regular basis." *Id.* 484 P.2d at 838. In so ruling, the court explicitly rejected the ownership theory urged by appellant in this case:

> "Although the term 'household' may be somewhat elastic, all of the definitions seem to have a common factor. They require that the members of the 'household' dwell or live together ... Regardless of the facts that [the named insured] maintained his daughter and her family in a residence in Eugene and he considered it his home and intended to return there, he and his daughter did not

---

5. In the following cases interpreting "his household" the court either relied upon cases interpreting "same household" or applied definitional language found in those cases. *Crossett v. St. Louis Fire & Marine Ins. Co.*, 289 Ala. 598, 269 So.2d 869 (Ala.1972); *Boisseranc v. Cal-Farms*, 151 Cal.App.2d 775, 312 P.2d 401 (Cal.App.1957); *State Farm Mut. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (Neb. 1971); *Schehen v. North-West Ins. Co.*, 258 Or. 559, 484 P.2d 836 (1971).

6. *See, e. g., State Farm Mut. Auto. Ins. Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789, 791

(1971) (interpreting identical language in a State Farm policy); *American States Ins. Co. v. Walker*, 26 Utah 2d 161, 486 P.2d 1042, 1043 (1971); *St. Paul Mercury Ins. Co. v. Nationwide Mut. Ins. Co.*, 209 Va. 18, 161 S.E.2d 694, 697 (Va.1968); *Hawaiian Ins. & Guaranty Co. v. Federated American Ins. Co.*, 13 Wash.App. 7, 534 P.2d 48, 51 (1975).

7. See also *Belling v. Harn*, 65 Wis.2d 108, 221 N.W.2d 888, 891 (1974) (applying the above language to "same household").

live together and could not form a household."

*Id.*[8]

Appellant asserts that even if we rely on *Lumbermen's* and hold that intent to permanently separate controls, we must nevertheless reverse because the trial court focused on the wrong intent. Appellant claims that since the question was whether Deborah, not Juanita, was an additional insured, the permanency of Robert's separation from Juanita was irrelevant; instead, the court should have focused on the permanency of Robert's separation from Deborah. I disagree.

Appellant's contention seems to be premised on an incorrect reading of the cases construing "household." The focus of those cases seems to be on whether the household, as a family entity, has been terminated. To this question the courts have uniformly responded that if the departing spouse intends not to return the family residence ceases to be "his household."[9]

Appellant correctly maintains that, even in the absence of ambiguity, the insurance policy must be construed "so as to provide that coverage which a layman would reasonably have expected given his lay interpretation of the policy's terms." *Wright v. Vickaryous*, 598 P.2d 490, 497 (Alaska 1979); *Stordahl v. Government Employees Ins. Co.*, 564 P.2d 63, 66 (Alaska 1977); *Continental Ins. Co. v. Bussell*, 498 P.2d 706, 710 (Alaska 1972). However, appellant has offered no extrinsic evidence to support his alleged expectation of coverage. Thus there is a lack of specific facts which would make the expected coverage reasonable.

Appellant contends that even if Deborah was not a resident of his household, he is nevertheless entitled to coverage under paragraph (3) of the State Farm policy. That paragraph defines an "insured" as:

"Any person, with respect to damages he is entitled to recover because of bodily injury to which this coverage applies sustained by an insured under (1) or (2) above."

Appellant concedes that on its face the above language requires that Deborah be an insured under either paragraph (1) or (2) before coverage is allowed. He argues, however, that paragraph (3) was intended to comply with the mandatory requirements of AS 28.20.440(b)(3) and should be ignored to the extent it attempts to restrict coverage only to injuries sustained by an insured. AS 28.20.440(b)(3) provides:

"(b) The owner's policy of liability insurance shall

.    .    .    .    .

(3) contain coverage ... for the protection of the persons insured under the policy who are legally entitled to recover damages from owners or operators of uninsured motor vehicles because of bodily injury or death arising out of the ownership, maintenance or use of the uninsured motor vehicle...."

Accordingly, appellant argues that in order to recover under the terms of his policy he need only show that he is an insured and that he is "legally entitled to recover damages" from the uninsured motorist on account of Deborah's death. Since AS 09.-55.580[10] and AS 09.15.010[11] expressly permit a parent to bring a cause of action for

---

**8.** *Schehen* was held to be controlling in *Waller v. Rocky Mountain Fire & Cas. Co.*, 272 Or. 69, 535 P.2d 530, 531 (1975), which construed a "same household" clause, the court treating the question as "whether one was a resident of the household of a named insured."

**9.** *Lumbermen's Mut. Cas. Co. v. Continental Cas. Co.*, 387 P.2d 104, 106–07 (Alaska 1963); *Reserve Ins. Co. v. Apps*, 85 Cal.App.3d 228, 149 Cal.Rptr. 223, 244 (Cal.App.1978); *American Cas. Co. v. Harleysville Ins.*, 238 Md. 322, 208 A.2d 597, 598–99 (1965); *Boon v. Premier Ins. Co.*, 519 S.W.2d 703, 705 (Tex.App.1975); *Hawaiian Ins. & Guaranty Co. v. Federated*

*American Ins. Co.*, 13 Wash.App. 7, 534 P.2d 48, 53 (1975).

**10.** AS 09.55.580(a) provides:

"*Action for wrongful death.* (a) When the death of a person is caused by the wrongful act or omission of another, the personal representatives of the former may maintain an action therefor against the latter, if the former might have maintained an action, had he lived, against the latter for an injury done by the same act or omission. The action shall be commenced within two years after the death, and the damages therein shall be such

the death of a minor child, appellant maintains that he is "legally entitled to damages" within the meaning of the statute.

Appellant's argument finds support in *State Farm Mutual Automobile Insurance Co. v. Selders*, 187 Neb. 342, 190 N.W.2d 789 (1971), where the Nebraska superior court held, on facts similar to those in the present case, that since the insured was legally entitled to recover for the death of his child under Nebraska law, he was entitled to coverage under the provisions of his insurance policy. *Selders* was rejected in *State Farm Mutual Insurance Co. v. Wainscott*, 439 F.Supp. 840 (D.Alaska 1977), the declaratory judgment action which preceded this case. I agree with the soundness of that decision.

In *Wainscott*, the court reasoned that in Alaska a parent may only maintain an action for wrongful death of a minor child in a representative capacity, the potential recovery to be distributed as the decedent's personal property. Accordingly, since Wainscott cannot bring such an action in an individual capacity it cannot be said that *he* is "legally entitled to recover damages" within the meaning of AS 28.20.440(b)(3).

I think this was a correct application of Alaska law. In *Matter of Estate of Pushruk*, 562 P.2d 329, 330–31 (Alaska 1977), we said:

> "AS 09.55.580 authorizes the personal representative to bring an action against a party whose wrongful acts or omissions have caused the death of the deceased.... [I]f the decedent is survived by a spouse, child or dependent, the action is brought on behalf of the statutory beneficiary and damages are measured by

the loss to the survivors. The personal representative is then a nominal party only and holds the recovery in trust. On the other hand, if the deceased is not survived by the beneficiaries named in the statute, the personal representative is the real party in interest in the wrongful death action. Damages are limited to the loss to the estate and are distributed as other personal property of the deceased." (footnotes omitted).

*See also Horsford v. Estate of Horsford*, 561 P.2d 722, 727 (Alaska 1977). As regards AS 09.15.010, I think the federal court was correct in characterizing this statute as "of a procedural nature creating no independent right of recovery in the parent." 439 F.Supp. at 843. Therefore, I find this branch of appellant's argument unpersuasive.

For the reasons given, I would affirm the judgment of the superior court.

damages as the court or jury may consider fair and just, and the amount recovered, if any, shall be exclusively for the benefit of the decedent's husband or wife and children when he or she leaves a husband, wife or children, him or her surviving, or other dependents. When the decedent leaves no husband, wife or children surviving him or her or other dependents, the amount recovered shall be administered as other personal property of the deceased person but shall be limited to pecuniary loss. When the plaintiff prevails, the trial court shall determine the allowable costs and expenses of the action and may, in its discretion, require notice and hearing

thereon. The amount recovered shall be distributed only after payment of all costs and expenses of suit and debts and expenses of administration."

11. AS 09.15.010 provides:

> "*Parents or guardian may sue for injuries or death to child.* A father or, in case of his death or desertion of his family, the mother may maintain an action as plaintiff for the injury or death of a child below the age of majority. A guardian may maintain an action as plaintiff for the injury or death of his ward."